In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3125

CARMELO QUINTANA,

*Petitioner-Appellant,*

*v.*

NEDRA CHANDLER, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 5629—**Edmond E. Chang**, *Judge.*

ARGUED MAY 22, 2013—DECIDED JULY 23, 2013

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

FLAUM, *Circuit Judge*. On a cold night in the winter of 1999, Carmelo Quintana and his two friends lured a woman into a van. Quintana restrained the victim, while his friend sexually assaulted her. Eventually, the victim escaped by jumping nude out of the moving van. Quintana was arrested and charged with kidnapping and sexual assault. After serving a year in prison awaiting trial, the state offered Quintana a plea deal, somewhat surprising

in its leniency, of a four-year sentence on the kidnapping charge and a four-year sentence on the sexual assault charge to run concurrently at 50% good time, allowing Quintana to plead guilty and serve one more year in prison before being released. Quintana declined the deal, opting to go to trial and face a minimum of two six-year consecutive sentences. Following his conviction, the district court sentenced Quintana to two consecutive terms in prison: one lasting six years and the other lasting twenty-one years. Thirteen years into his sentence, Quintana asks this court to grant him a writ of habeas corpus, claiming his trial counsel failed to adequately inform him of the consequences of his plea. For the reasons set forth below, we deny the writ.

## I. Background

### A. Factual Background

In the winter of 1999, Quintana was a passenger in a van driven by Dagoberto Alvarado. Jorge Navarette, also a passenger, pulled a woman into the van, took her clothes off, and tried to rape her, while Quintana held her down, covered her mouth, and slapped her buttocks. The woman tried to escape but was pulled back in. She then offered to get on top of Navarette to improve her chances of escaping, which allowed her to jump out of the moving van naked and screaming. Police detained Navarette and Quintana, and Alvarado apparently fled to Mexico. Quintana confessed to committing the crime.

After being charged, Quintana retained a lawyer with limited experience—prior to representing Quintana,

Attorney Dennis Kellogg had handled only three felony trials. Aside from their initial meeting, Quintana met with Kellogg only at court appearances and never apart from his co-defendant. Quintana's conversations with his lawyer were short and translated by his co-defendant's counsel, other inmates, and court interpreters.

Before his trial, the state offered Quintana a plea deal requiring him to serve two concurrent four-year terms of imprisonment at 50%. Because Quintana had already served a year in prison, the deal would have required him to serve only one additional year. He declined the state's offer, however, and according to Kellogg, insisted he was innocent. Quintana claimed Alvarado was the perpetrator. Evidence also suggests that Kellogg apparently misunderstood Quintana's potential sentence. He thought Quintana was facing two six-year concurrent minimum sentences at 50%, but in actuality, the charged crimes presented two six-year minimum consecutive sentences to be served at 85%.

Quintana proceeded to a simultaneous, but separate, bench trial with Navarette. At trial, the two defendants presented a story of consensual sex between Alvarado and the victim. The trial court rejected this argument as incredible and ultimately sentenced Quintana to a twenty-one-year term for sexual assault and a six-year term for kidnapping to be served consecutively at 85% for good time.

**B. Procedural Background**

After an unsuccessful direct appeal, Quintana pursued state post-conviction relief claiming, among other things, that Kellogg's performance during the plea stage was ineffective. He submitted two affidavits, one that he signed and one signed by Kellogg. Quintana's affidavit stated that when he rejected the plea offer, he believed that his sentences would run concurrently, that he would only have to serve 50% of the time, and that Kellogg had not advised him otherwise. Quintana claimed he would not have proceeded to trial had he been properly informed on the length and consecutive nature of the sentence he was facing. He also stated that he did not understand the law of guilt by accountability or that his statement would be introduced against him at trial. Kellogg's affidavit confirmed some of Quintana's allegations. He admitted he did not know the sentences would be served consecutively. He noted that there was "some discussion" on sentences not being served at 50% and that he characterized the offer as "reasonable," but explained that Quintana insisted he was innocent because Alvarado was the perpetrator.

The trial court denied Quintana's petition and the state appellate court affirmed, holding that Quintana had failed to establish that any deficiency on Kellogg's behalf resulted in prejudice. It found Quintana's affidavits self-servingly unreliable and uncorroborated especially in light of Kellogg's statements that there was "some talk" that sentences were no longer served at 50%. The Illinois Supreme Court summarily affirmed that decision.

After exhausting his state remedies, Quintana petitioned for a writ of habeas corpus in federal court. The district court held an evidentiary hearing and agreed with Quintana that Kellogg's performance was inadequate insofar as he failed to inform Quintana that his sentences would be served consecutively at 85% rather than concurrently at 50%. The court presumed that the state court had rejected this performance argument and, even under the Antiterrorism and Effective Death Penalty Act's ("AEDPA") highly deferential review, concluded that there was no reasonable basis for that apparent rejection. However, the court found that Quintana had failed to carry his burden of proving that Kellogg did not inform him of Illinois accountability law. On the question of prejudice, the district court rejected Quintana's claim. It first gave deference to the state court's decision under AEDPA and limited itself to the record before the state court. On the basis of that record, it held that the state court's decision was reasonable. The court then concluded that even with the benefit of the evidence presented at the evidentiary hearing, Quintana was not prejudiced because he would have declined the plea offer. The evidentiary hearing established that Quintana had insisted he was innocent, which the court reasoned would have influenced him to proceed to trial.

## II. Discussion

This court will issue a writ of habeas corpus only if a petitioner's custody is "in violation of the Constitution

or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court adjudicated the petitioner's claim on the merits, we will grant the requested relief only when the decision below is "contrary to, or involve[s] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or when the state court's analysis "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d)(1)-(2). In reviewing state court decisions entitled to deference under § 2254(d), we are confined to evidence before the state court when it rendered its decision. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011). In such a case, we cannot augment our reasonableness review with evidence produced at a district court's evidentiary hearing. *Id.*

Although a state court decision that stems from an unreasonable application of federal law will usually meet § 2254(a)'s requirement that the petitioner's custody be in "violation of the Constitution," this court will engage in de novo review after a finding of unreasonableness to answer the 2554(a) question as if the state court never reached the merits. At that point, a federal court can benefit from an evidentiary hearing under § 2254(e). *See Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring); *Mosley v. Atchison*, 689 F.3d 838, 853 (7th Cir. 2012). Where the district court held an evidentiary hearing, we review its factual determinations for clear error but its determination of legal questions—whether the state court's decision was unreasonable or whether the petitioner's custody violates the Constitu-

tion—de novo. *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011).

On appeal, Quintana claims, as he did in the district court and in the state court proceedings, that he is entitled to habeas relief because his counsel was ineffective during the plea stage of his case. In order to show ineffective assistance of counsel, Quintana must prove that (1) his counsel's performance prior to and during the plea negotiations was objectively deficient and (2) he was prejudiced by this performance because a reasonable probability existed that he would have accepted the plea but for his counsel's deficient performance. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384, 1391 (2012); *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

At the outset, we must determine whether to give deference to the state court on the deficiency issue under § 2254(d). Below, the district court held that deference was appropriate under *Harrington v. Richter*, 131 S. Ct. 770 (2011), and questioned whether there was a reasonable basis for the state court's decision. In *Harrington*, the Supreme Court held that where a state court's decision is unaccompanied by explanation in the form of a summary dismissal, 2254(d) deference still applies because the decision is nevertheless "on the merits." *Id.* at 784. In such a case, the Court explained that a petitioner must meet his burden "by showing there was no reasonable basis for the state court to deny relief." *Id.* Importantly, however, when a state court makes the basis for its decision clear, 2254(d) deference applies only to those issues the state court explicitly

addressed. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

This court's decision in *Woolley v. Rednour* is instructive on this point. 702 F.3d 411, 421-22 (7th Cir. 2012). In *Woolley*, the state court denied the petitioner post-conviction relief on his ineffective assistance claim after concluding that he was not prejudiced by any deficiency on the part of his counsel. *Id.* at 420-21. The appellate court agreed that no prejudice occurred, leaving the effectiveness prong untouched. *Id.* at 421. In light of those decisions, we declined the state's request to apply 2254(d) deference to the state court on the ineffectiveness prong, holding that *Strickland* claims are divisible and *Harrington* applies only where a "state court's decision is unaccompanied by an explanation"—that is, where the court summarily dismisses the petition. *Id.* at 422 (quoting *Harrington*, 131 S. Ct. at 784). In *Woolley*, there was no "uncertainty regarding the reasoning of the Illinois courts"—they explicitly ruled on prejudice grounds—so "we review[ed] attorney performance de novo." *Id.; see also Pinholster*, 131 S. Ct. at 1412 (Breyer, J., concurring) ("[I]f the state-court rejection rested on only one of several related federal grounds (*e.g.,* that counsel's assistance was not 'inadequate'), [and] the federal court found that the state court's decision in respect to the ground it decided violated [§ 2254(d)], an [evidentiary] hearing might be needed to consider other related parts of the whole

constitutional claim (*e.g.,* whether the counsel's 'inade-quate' assistance was also prejudicial).").

Thus, as a threshold matter, we conclude that the district court erred in applying 2254(d) deference on the question of Kellogg's effectiveness. The Illinois courts resolved Quintana's ineffectiveness claim on the issue of accountability liability by concluding Quintana was not prejudiced and without reaching the ineffectiveness question. Under *Wiggins,* we review this unaddressed prong de novo. *Wiggins,* 702 F.3d at 422.

## A. Counsel's Performance Was Deficient, But Not With Respect to Accountability Liability

Here, the state concedes that Attorney Kellogg performed ineffectively by failing to warn Quintana that (1) the sentences on the sexual assault and kidnapping counts must run consecutively and (2) the good-time credits on the sentences for those felonies must be limited to 15% rather than 50%. However, the parties dispute Kellogg's effectiveness with respect to accountability liability—that is, whether Kellogg properly corrected any misunderstanding from Quintana on his potential criminal liability for the acts of others.

In light of the evidence presented during the hearing in the district court, Quintana cannot prove his attorney's performance was deficient on this point. *Strickland*'s presumption of adequate counsel requires that we assume Kellogg explained accountability liability to Quintana. *Strickland,* 466 U.S. at 689 ("[A] court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). And because the petitioner bears the burden of proving his habeas claim, Quintana must convince us that Kellogg did not provide an adequate explanation. *See id.*

In the affidavit he submitted to the state court, Quintana stated:

> I did not understand the law of guilt by accountability. My attorney did not tell me, in discussing the four-year offer, that the State would introduce my signed statement, and if the court believed my statement, it would show my guilt by accountability.

Kellogg, on the other hand, explained:

> [D]uring the discussion of the four-year offer, I did not advise Mr. Quintana that his signed statement would be admitted into evidence at trial, and that it established his guilt of both aggravated criminal sexual assault and aggravated kidnapping by accountability.

Deferring to the state court, the district court concluded that these statements were sufficiently "fuzzy" to allow a reasonable jurist to conclude that Kellogg may have timely communicated the concept of accountability liability before Quintana rejected his plea. But the district court erred by deferring to the state court's conclusions and by looking solely to the affidavits presented in the state court. We must review this claim de novo, and consider the evidence presented to the district court during the evidentiary hearing. *Woolley*, 702 F.3d at 422.

Looking to that evidence, it appears that there is a strong possibility that Quintana understood accomplice liability at the time of his plea. Although he had difficulty remembering the decade-old conversations with his client, Kellogg testified that he discussed the concept of accountability liability with Quintana. He stated that he used "simple" terms to explain to Quintana "in some form or fashion that he [could] be held accountable or criminally responsible for the acts of others." According to Kellogg, Quintana was "certainly. . . aware . . . of the concept of accountability . . . before trial." Kellogg testified that he had his law clerk research the doctrine of accountability, and his notes from Quintana's bail hearing also touch on the topic.

The point at which Kellogg discussed accountability with Quintana is less clear. Kellogg could not remember one way or the other whether he mentioned it during the plea conversation. To be sure, Kellogg's representation would cause constitutional problems if Quintana had rejected his plea on a misunderstanding that he would not be guilty because he was not the principal participant in the sexual assault. But Quintana bears the burden of proving this misunderstanding. And with Kellogg's statements, he has at best created ambiguity.[1]

---

[1] Quintana also insisted that he and Navarette were completely innocent—that neither of them had committed a crime. He did not contend that Navarette raped the victim and that he was innocent because he only restrained her. Testimony to this effect would have raised questions about Quintana's

(continued...)

*Cuppett v. Duckworth*, 8 F.3d 1132, 1137 (7th Cir. 1993) ("In the face of legal presumptions, ambiguities must be construed against the party carrying the burden of proof.").

That leaves Quintana with his own assertions that he never learned of the doctrine of accountability. However, the district court, to which we defer on factual findings, concluded that Quintana "came across as a witness who was willing to emphatically lie so long as it helped his cause." In support of its conclusion, the district court identified four inconsistencies from the evidentiary hearing: (1) Quintana testified he told Kellogg that he restrained the victim and slapped her buttocks, but Kellogg's testimony and his contemporaneous notes show Quintana denied this conduct; (2) Quintana testified that Navarette's lawyer told him to claim Alvarado had sex with the victim, but Lopez denied this allegation and Kellogg's intake notes (before Quintana met Lopez) reflect Quintana blamed Alvarado; (3) Quintana denied Kellogg told him he was charged with kidnapping, but the district court believed Kellogg's statement to the contrary; and (4) Quintana denied Kellogg rehearsed their direct examination, but Kellogg and Navarette's lawyer confirmed they did. We will upset the district court's factual findings only if they are clearly erroneous, and credibility determinations are

---

[1] (...continued)

understanding of accountability liability and may have suggested that Kellogg did not fulfill his responsibility to correct Quintana's misunderstanding.

the most difficult of those to overturn. *See Williams v. Lemmon*, 557 F.3d 534, 540 (7th Cir. 2009). Here, we do not find the district court's findings to be clearly erroneous, and without Quintana's predominantly incredible testimony, all that remains is an at-best ambiguous record insufficient to find Kellogg's performance deficient. Accordingly we conclude that Quintana has not met his burden of showing that Kellogg's performance was deficient with respect to accountability liability.

## B.  Quintana Cannot Show He Was Prejudiced

Quintana is thus left with Kellogg's failure to inform him that his sentences would be served consecutively at 85% rather than concurrently at 50%, and he must show that he was prejudiced by that deficiency. The state appellate court dismissed Quintana's case on this issue in a written opinion, so we apply 2254(d) deference. *Woolley*, 702 F.3d at 424. We must therefore determine whether the state court unreasonably applied clearly established federal law. 28 U.S.C. § 2254(d). Disagreement with the state court's conclusion on prejudice is not enough for an unreasonableness determination—the decision is reasonable if "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). But if, on the basis of the record before the state court, we were to determine that the state court's decision is unreasonable, we would no longer defer to the state court and would move on to conduct de novo review with the benefit

of evidentiary hearings under § 2254(e). *Mosley*, 689 F.3d at 853.

To establish prejudice, Quintana "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385.

This case turns on whether Quintana would have accepted the plea offer had he known the consequences of a guilty verdict. In support of his contention, Quintana again points to the affidavits submitted in the state court. There, Quintana represented that "[i]f [he] had known that the minimum sentence was not six years of which 50% would be served, but 12 years of which 85% would be served, [he] would have accepted the four-year offer." With respect to the plea, Kellogg added only that he had characterized the state's plea offer as "reasonable" but did not specifically recommend he take it because Quintana "insisted that he was not directly involved and the actual perpetrator was an individual who fled to Mexico."

On the basis of this evidence, the state court concluded that Quintana had not shown he was prejudiced by Kellogg's deficiency, and we cannot say that the state

court was compelled to reach a contrary conclusion. Quintana's statements in his affidavit are uncorroborated and conclusory, and a "fairminded jurist" could find such evidence inadequate to show that Quintana was prejudiced as a result of his counsel's deficiency. Recognizing the lack of corroborating evidence, Quintana argues that "any marginally sane or rational person would have accepted the four year offer if adequately advised about [his] situation." Essentially, he requests a per se rule that petitioners (1) faced with poor prospects at trial, (2) offered a disparately generous plea relative to their sentences, and (3) who assert they would have accepted the plea had they been knowledgeable about their situation are always prejudiced.

True, Quintana could have left prison in a year had he accepted the state's plea proposal—the state offered Quintana two years (four years to be served at 50%), and Quintana had already served one year awaiting trial. He faced a minimum of 10.2 years if convicted (two six-year consecutive sentences to be served at 85%) and the prospect of serving an even longer sentence (he actually received twenty-one years). Moreover, Quintana could not have reasonably expected to win: he had a signed confession and his consent story was seriously undermined by the victim having jumped naked out of a moving van on a winter night. But even in the face of a favorable plea offer and unfavorable facts, some defendants might still advance to trial, swearing they are innocent and thinking they can succeed against the state. Quintana fell into that group. Kellogg's affidavit confirms that Quintana "insisted that he was not

involved and the actual perpetrator was an individual who had fled to Mexico." Further, while the difference between two and ten years may seem great, the difference between a not guilty verdict and two years in prison may be even greater for some defendants. Admitting to kidnapping and sexually assaulting an individual comes with a serious cost.

In order to find prejudice, we must be convinced that a disparately generous plea compels a fairminded jurist to conclude that the defendant would have a reasonable probability of accepting the plea. *See Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (explaining that a petitioner "must . . . come forward with objective evidence" supporting his contention). But as we have discussed, there are reasons a properly advised, rational defendant might still reject the plea Quintana was offered. The Illinois appellate court had to determine in the first instance whether Quintana fell into this subset. Quintana tries desperately to show that *most* or *many* defendants in his position would accept the plea. This is not enough. Quintana must offer something more than the large gap in sentence lengths to show that *he* would have accepted the sentence. Given that he presented no such evidence, we find that a reasonable basis existed for the state court's determination that Quintana was not prejudiced by any deficiency on the part of his counsel.[2]

---

[2] Because a federal court must defer to a state court's ruling under § 2254(d) when addressing an issue explicitly discussed
(continued...)

We note that our independent view of whether Quintana was prejudiced is irrelevant. As the fifth court to review Quintana's case, we stand only as a "'guard against extreme malfunctions in the state criminal justice systems,' [and] not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). Having found that the state court's ruling on prejudice is not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," we are in no position to grant Quintana's request in this case. *See id.* at 786-87.

## III. Conclusion

For these reasons, we DENY Quintana's petition for a writ of habeas corpus.

---

[2] (...continued)

and ruled upon by the state court, *see Woolley*, 702 F.3d at 424, and because the court must, in such a case, restrict its review to the record before the state court, there was no need for the district court to receive evidence on the issue of prejudice during the evidentiary hearing.

---