In the

# United States Court of Appeals
### For the Seventh Circuit

No. 14-3158

CURTIS J. PIDGEON,

*Petitioner-Appellee,*

*v.*

JUDY P. SMITH, Warden,

*Respondent-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 13-cv-57 — **Barbara B. Crabb**, *Judge.*

ARGUED FEBRUARY 25, 2015 — DECIDED MAY 13, 2015

Before BAUER, FLAUM, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* Curtis Pidgeon is currently confined in a Wisconsin prison after pleading guilty to a sexual assault charge in Dodge County. He now seeks to withdraw that plea, arguing that he agreed to a plea bargain only because of incorrect—and, he claims, constitutionally ineffective—advice from his attorney. After exhausting his state remedies, Pidgeon filed a petition for a writ of habeas corpus in the Western District of Wisconsin. He claims that the per-

formance of his trial counsel, Joseph Fischer, was constitu-
tionally ineffective because he incorrectly advised Pidgeon
that he would face a mandatory sentence of life imprison-
ment without the possibility of parole if convicted in both
the Dodge County case and a pending case in Columbia
County. Attorney Fischer was under the mistaken impres-
sion that Pidgeon had previously been convicted of one "se-
rious felony," as defined by Wisconsin's "persistent repeat-
er" law, Wis. Stat. § 939.62(2m)—an aggravated battery con-
viction in Dane County—and therefore that convictions in
Dodge and Columbia Counties would be his second and
third serious felony offenses, resulting in a mandatory life
term pursuant to the persistent repeater law. After receiving
this advice from counsel, Pidgeon agreed to a plea bargain
which required him to serve a prison sentence of ten years,
but also required the State to refrain from prosecuting him in
the Columbia County case, thereby eliminating the possibil-
ity of a mandatory life sentence. In fact, however, this advice
was incorrect—the Dane County conviction did not qualify
as a serious felony offense, meaning that Pidgeon did not
face the possibility of life imprisonment. In his habeas peti-
tion, Pidgeon alleges that he would not have accepted the
plea agreement had he received correct legal advice.

The district court found that an evidentiary hearing was
necessary to determine whether Pidgeon's constitutional
right to effective assistance had been violated. Pidgeon testi-
fied at this hearing, but his trial counsel did not. The district
court found that the trial counsel's performance had been
constitutionally ineffective, and granted a writ of habeas
corpus allowing Pidgeon to withdraw his plea and instead
proceed to trial. Respondent—Pidgeon's custodian Judy
Smith—now appeals the grant of the writ, arguing that

Pidgeon did not satisfy his burden of proving that his trial counsel had been ineffective because Pidgeon failed to call him as a witness during the evidentiary hearing, as would have been required in an ineffective assistance hearing held in Wisconsin state court. We disagree. There is no requirement that federal courts assessing an ineffective assistance claim follow state evidentiary procedure, and the district court judge did not abuse her discretion by declining to enforce her earlier order which arguably called for the presentation of the trial counsel's testimony at the evidentiary hearing. We affirm the judgment of the district court.

## I. Background

In October 2007, Pidgeon was charged in Dodge County with four counts of second-degree sexual assault of a child and two counts of fourth-degree sexual assault. He eventually agreed to a plea bargain—from which he now seeks to withdraw—in which he pled no contest to one count of second-degree sexual assault of a child; the other counts were dismissed and read in. Pursuant to the terms of that plea bargain, Pidgeon was sentenced to ten years of confinement and ten years of extended supervision. Pidgeon claims that he accepted this plea due to incorrect information provided to him by his trial counsel. It is uncontested that counsel—as well as the prosecutor—told Pidgeon that, if he did not accept the plea bargain, he faced the possibility of life in prison under the Wisconsin persistent offender law. *See* Wis. Stat. § 939.62(2m). Under that law, a third "serious felony" conviction results in mandatory life imprisonment without the possibility of parole. *Id*. Pidgeon's counsel apparently thought that (1) Pidgeon's 1991 Dane County aggravated battery conviction constituted a serious felony offense; (2)

the Dodge County charges would constitute a second serious felony offense if Pidgeon were convicted; and (3) Pidgeon faced a third possible serious felony conviction (for third-degree sexual assault of an adult) in a Columbia County case in which Pidgeon was a suspect but had not yet been charged. Pidgeon's plea deal in the Dodge County case was designed to avoid life imprisonment under this calculation—if Pidgeon agreed to the plea bargain, the Columbia County district attorney's office agreed not to prosecute its case against him.

However, both Pidgeon's counsel and the prosecutor were wrong about Pidgeon's exposure to life imprisonment. As respondent now concedes, Pidgeon's 1991 Dane County conviction for aggravated battery does not constitute a serious felony offense under the persistent repeater law.[1] There

---

[1]Wisconsin penalizes battery and aggravated battery under Wis. Stat. § 940.19. Pidgeon's 1991 Dane County conviction fell under subsection (3) of the 1991 version of that section. Pidgeon's Dodge County plea occurred in 2008; neither the current version of § 940.19 nor the 2008 version includes any subsection (3), but subsection (6) in both versions appears to be materially equivalent to the subsection (3) under which Pidgeon was convicted in 1991. *Compare* Wis. Stat. § 940.19(3) (1991–92), *available at* https://docs.legis.wisconsin.gov/1991/statutes/statutes/940.pdf, *with* Wis. Stat. § 940.19(6) (2015), *and* Wis. Stat. § 940.19(6) (2007–08), *available at* https://docs.legis.wisconsin.gov/2007/statutes/statutes/940/II/19. The current Wisconsin persistent repeater statute includes one form of battery in its enumerated list of serious felonies: battery under § 940.19(5). Subsection (5) appears to be the contemporary equivalent of 1991's subsection (2). *Compare* Wis. Stat. § 940.19(2) (1991–92) *with* Wis. Stat. § 940.19(5) (2015). The current version of the persistent repeater statute does not list Pidgeon's 1991 crime of conviction—§ 940.19(3)—or its contemporary equivalent, § 940.19(6), as a serious felony. *See* Wis. Stat. § 939.62(2m) (2015). The same was true of the 2008 version of the persistent repeater statute. *See* Wis. Stat. § 939.62(2m) (2007–08). Put dif-

is also doubt as to whether the possible charges in Columbia County could have led to a serious felony conviction because, in that case, Pidgeon was being threatened with charges of only third-degree sexual assault, which is not defined as a serious felony offense.[2] Pidgeon, though, did not know of his counsel's error, and he accepted the plea bargain. Neither Pidgeon nor respondent provided the district court with any information regarding what sentence Pidgeon would have been exposed to had he been convicted after a trial in Dodge or Columbia County.

---

ferently, a battery does not constitute a serious felony unless it "causes great bodily harm" and was done "with intent to cause great bodily harm." *See* Wis. Stat. § 940.19(5) (2015). Pidgeon's 1991 conviction required a lesser showing—that he "intentionally cause[d] bodily harm to another by conduct which creates a high probability of great bodily harm."

[2] According to Pidgeon, there is a third, more technical, reason why his counsel was wrong to believe that Pidgeon faced life imprisonment under the persistent repeater statute. Under that law, a person convicted of a third serious felony is a persistent repeater only if he "has been convicted of a serious felony on 2 … separate occasions *at any time preceding the serious felony* for which he or she presently is being sentenced." Wis. Stat. § 939.62(2m)(b)(1) (emphasis added). Pidgeon reads this to mean that the *conduct* at issue in the third prosecution must occur subsequent to the first two convictions. Because the conduct at issue in the threatened Columbia County case preceded Pidgeon's Dodge County conviction, Pidgeon therefore would not have been a persistent offender under this reading of the statute even if he had been convicted in all three cases and even if all three convictions counted as serious felony offenses. We refrain from deciding whether this statutory argument is correct, however, because it is clear that counsel's advice was incorrect for other, more obvious reasons.

After he began his term of incarceration, Pidgeon learned of his counsel's mistake and filed a post-conviction motion in state court seeking to withdraw his plea or, alternatively, for a hearing on his claim of ineffective assistance. In Wisconsin, such a hearing is known as a *Machner* hearing; the name refers to *State v. Machner*, 285 N.W.2d 905 (Wis. Ct. App. 1979). The state circuit court denied Pidgeon's motion, stating that it saw no evidence of deficient performance. Pidgeon appealed this decision to the Wisconsin Court of Appeals. It affirmed and denied Pidgeon a *Machner* hearing. The Court of Appeals assumed without deciding that trial counsel's performance had been deficient, but found that Pidgeon had not shown any evidence of prejudice, as is required under the familiar two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Pidgeon's petition for review to the Wisconsin Supreme Court was denied.

Pidgeon then filed a petition for a writ of habeas corpus in the Western District of Wisconsin. In a December 13, 2013 order, the district court ruled that the Wisconsin Court of Appeals unreasonably applied *Strickland* and the related precedent of *Hill v. Lockhart*, 474 U.S. 52 (1985)—which holds that the *Strickland* test applies to guilty plea challenges based on ineffective assistance—when it denied Pidgeon's request for a *Machner* hearing. As respondent does not appeal this determination, we omit further details of the district court's legal analysis on this matter.

After ruling that the state court had unreasonably applied federal law, the district court determined that an evidentiary hearing was necessary to determine whether the writ should be granted. In ordering a hearing, the district court stated that "Petitioner will have to introduce all the ev-

idence he would have presented had the state court allowed him a *Machner* hearing, explaining in detail counsel's defective advice and the way in which it prejudiced him." *Pidgeon v. Smith*, No. 13-cv-57, slip op. at 19 (W.D. Wis. Dec. 13, 2013). According to respondent, this statement imposed a requirement that Pidgeon call his trial counsel as a witness during the federal evidentiary hearing because, under Wisconsin law, "[w]here an ineffective assistance of counsel claim is raised, trial counsel must be informed and his or her presence is *required* at any hearing in which counsel's conduct is challenged." *State v. Allen*, 682 N.W.2d 433, 437 n.3 (Wis. 2004) (emphasis added).

The evidentiary hearing was held on April 25, 2014. Pidgeon was the only witness. He testified about the incorrect information given to him by his trial counsel. He also stated that when he signed the plea offer, he included the small capital letters "T," "D," and "C," which he said referred to the fact that he was entering the plea under "threat, duress, and coercion"—specifically, the threat of a life sentence. (Those letters do indeed appear within his signature on the plea agreement form.) Pidgeon also testified that he took the plea only because he believed he was facing a life sentence, and that had he known that he did not in fact face a life sentence, he would have proceeded to trial in both Dodge and Columbia Counties. After Pidgeon testified, he rested his case, and respondent's attorney stated that he had no witnesses to call. At that point, Judge Crabb seemed surprised that neither party had called the trial counsel. Judge Crabb was also concerned by the fact that neither party had provided any information regarding the sentence Pidgeon would have faced had he been convicted at trial in Dodge or Columbia County.

On August 29, 2014, the district court granted a writ of habeas corpus to Pidgeon. The court concluded that Pidgeon's trial counsel had been deficient because "reasonable counsel would have investigated petitioner's prior felony conviction in Dane County to determine whether it would qualify as a serious felony under the persistent repeater statute before telling petitioner that he faced a life sentence if he did not plead guilty in Dodge County." *Pidgeon v. Smith*, No. 13-cv-57, slip op. at 9 (W.D. Wis. Aug. 29, 2014). Moreover, the court stated that "a reasonably capable lawyer would have made inquiries about the nature of the [Columbia County] conduct to determine the likelihood that it would be charged as a serious felony. He would not tell a client that he faced a mandatory life sentence without undertaking an investigation to determine that the advice was accurate." *Id*.

Regarding prejudice, the district court stated that Pidgeon had shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 694). "The only evidence on this point is petitioner's unrebutted testimony: he would have taken his chances at trial in Dodge County had his counsel not told him, inaccurately, that he ran a strong risk of getting a life sentence under the persistent repeater statute." *Id*. "Respondent," the court continued, "has neither adduced any evidence that would tend to call petitioner's testimony into question nor suggested that even if counsel misrepresented the potential sentence petitioner could receive, it was not significantly different from what he could actually have received. I find petitioner's testimony credible." *Id*.

## II. Discussion

Respondent does not appeal the district court's determination that the Wisconsin Court of Appeals unreasonably applied clearly established federal law when it denied Pidgeon an evidentiary hearing on his ineffective assistance claim. Rather, the only issue on appeal is whether Pidgeon, at the federal evidentiary hearing, met his burden of proving ineffective assistance. When a district court has held an evidentiary hearing in a habeas case, we review its factual determinations for clear error and its legal decision that a prisoner's custody violates the Constitution de novo. *Quintana v. Chandler*, 723 F.3d 849, 852 (7th Cir. 2013).

Respondent's argument centers on the fact that Pidgeon did not call his trial counsel as a witness during the federal evidentiary hearing. In respondent's brief, she argues that this doomed Pidgeon's case for two reasons. First, Pidgeon would have been required to present the testimony of his trial counsel at a *Machner* hearing—the Wisconsin analogue to the federal ineffective assistance hearing held in this case. Second, the district court's December 13, 2013 order stated that, at the evidentiary hearing, Pidgeon would have to "introduce all the evidence he would have presented had the state court allowed him a *Machner* hearing."

At oral argument, counsel for respondent rightly conceded that, normally, federal courts do not have to follow state procedural rules when holding evidentiary hearings for ineffective assistance claims. The reason for this is clear: an ineffective assistance claim is a claim under the United States Constitution. *See Strickland*, 466 U.S. at 687 (noting that the right to effective assistance of counsel stems from the Sixth Amendment). States may devise their own procedures for

determining whether a counsel's performance was constitu-tionally ineffectual, as long as they abide by Supreme Court precedent. But such procedures are in no way binding on federal courts. Nothing in *Strickland* or its progeny requires prisoners seeking to prove ineffective assistance to call the challenged counsel as a witness. Although Wisconsin courts have chosen to mandate this procedure, that choice has no bearing on what federal courts must do.

Respondent's second argument—that the judge's earlier order required Pidgeon to call his trial counsel as a wit-ness—has more bite, though we ultimately do not think that it requires reversal. In evaluating respondent's claim, we must determine whether Judge Crabb's interpretation and application of her December 13, 2013 order was an abuse of discretion. *Chi., Rock Island & Pac. R.R. Co. v. Atchison, Topeka & Santa Fe Ry. Co.* 860 F.2d 267, 272 (7th Cir. 1988) ("We will not reverse a district court's interpretation of its own order unless the record clearly shows an abuse of discretion." (cita-tion and internal quotation marks omitted)). There was no abuse of discretion here.

First, as we stated above, there is simply no requirement that trial counsel testify during a federal ineffective assis-tance evidentiary hearing. It would be odd to say that the judge abused her discretion by excusing petitioner from an added procedural burden that federal courts have long de-clined to impose.

Moreover, we do not think that trial counsel's testimony would have been of great value in this case. In order to demonstrate that he received constitutionally ineffective counsel, Pidgeon was required to show that his counsel's performance "fell below an objective standard of reasona-

bleness" and that the deficient performance prejudiced his defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687–88, 694.

Regarding the deficient performance prong, respondent has not explained how trial counsel's testimony could have changed the district court's conclusion. In *Moore v. Bryant*, 348 F.3d 238, 242 (7th Cir. 2003), we said that the deficient performance prong is met where "erroneous advice is provided regarding the sentence likely to be served if the defendant chooses to proceed to trial, and that erroneous advice stems from the failure to review the statute or caselaw that the attorney knew to be relevant." Here, trial counsel did not verify the veracity of an immensely important fact—whether his client could be sent to prison for the rest of his life—even though doing so would have been simple. Even if counsel reviewed the persistent repeater statute, we think that a reasonably competent attorney would have realized that Pidgeon's 1991 conviction was not a serious felony.

Wisconsin's persistent repeater statute is relatively straightforward. It provides an exhaustive list of current Wisconsin felonies that are defined as "serious." However, determining whether an older conviction—specifically one, such as Pidgeon's 1991 conviction, that occurred prior to April 28, 1994—is a serious felony conviction is more complicated. One must determine whether that crime is "comparable" to one of the listed crimes. Wis. Stat. § 939.62(2m)(d).[3]

---

[3] The same is true for convictions under federal law and under the law of other states. Wis. Stat. § 939.62(2m)(d).

Perhaps counsel would have testified that he reviewed the persistent repeater statute and that he believed that Pidgeon's 1991 conviction was comparable to one of the listed serious felonies. That assistance would have been better than not checking the statute at all, but we still conclude it would have been constitutionally ineffective. Any reasonably competent attorney would have been able to determine that the 1991 conviction was not for a crime comparable to one of the listed crimes. As we stated previously, the subsection under which Pidgeon was convicted in 1991—§ 940.19(3)—has a clear contemporary analogue—§940.19(6)—which is not listed as a serious felony. And the only battery crime that is listed as a serious felony—§ 940.19(5)—has a clear 1991 analogue. *See* § 940.19(2) (1991).

As the Supreme Court has stated, "[w]hen the … consequence" of a plea "is truly clear … the duty to give correct advice is equally clear." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). We cannot think of any possible strategic explanation for counsel's mistake—he either neglected to read the statute or interpreted it in an unreasonable manner. Nothing counsel could have said at the evidentiary hearing would have made this error reasonable. And, because the state concedes that counsel did in fact give this erroneous advice, his testimony was not necessary to test the veracity of Pidgeon's claim.

As for the prejudice prong, we similarly struggle to understand what value counsel's testimony could have added. Respondent argues, basically, that Pidgeon received a favorable deal in this case, and that his testimony at the evidentiary hearing was "self-serving." First, though, it is difficult for us to evaluate this claim, as respondent has not provided

us with any information regarding the sentences Pidgeon would have faced had he proceeded to trial in Dodge and Columbia Counties. Second, a defendant who foregoes trial in favor of a plea deal based on incorrect advice can still show prejudice even if the terms of the plea are highly favorable. The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea bargaining stage. [4] If a petitioner is found credible, however, he can show prejudice even if he got a "good deal"—that is, even if his expected sentence at trial (probability of conviction times the length of incarceration if convicted) was greater than what he received in a plea deal. The correct prejudice inquiry is not whether he would have been better off going to trial, but whether he would have elected

---

[4] For example, if Pidgeon would have faced a very long sentence at trial—say 70 years in prison—it would make his claim that he would have gone to trial had he received correct advice less believable, as the choice he actually faced (10 years versus a chance of 70) was, in practice, very similar to the choice he thought he faced (10 years versus a chance of life). In contrast, Pidgeon's claim would be more credible if the actual sentence he would have faced were much lower, for example 6 years. In that case, it would seem more probable that his choice to accept a plea of 10 years was made only to avoid the possibility of a life sentence. Pidgeon has told us in his appellate briefs that the actual term he faced was 25 years. We are unsure of whether this refers only to the Dodge County case or if it also includes the Columbia County case. Regardless, this information should have been presented to the district court at the evidentiary hearing, not to this court. Though presentation of this evidence is a best practice, we think that, for the reasons presented in the main text—and in the absence of any evidence from respondent that Pidgeon would have faced an extremely long sentence at trial—Pidgeon has carried his burden of proving that trial counsel's ineffective assistance resulted in prejudice.

to go to trial in lieu of accepting a plea. *See Ward v. Jenkins*, 613 F.3d 692, 700 (7th Cir. 2010) ("We need not assess the likely success of [petitioner's] defense; [his] claim that he would have insisted on going to trial to pursue it is enough … ."). Pidgeon had a constitutional right to a trial; if his attorney's deficient performance led him to forego that right, that is prejudice in itself.

Respondent argues that Pidgeon's testimony that he would have gone to trial absent his counsel's incorrect advice is self-serving. His counsel, respondent advances, may have testified that, at the time Pidgeon accepted the deal, Pidgeon indicated that he would have accepted it even absent the threat of a life sentence. While that is possible, we think it highly unlikely given the multiple indications that Pidgeon's testimony is credible. Most obviously, Pidgeon's claim is supported by the common-sense notion that the threat of spending the rest of one's life in prison can induce a defendant to agree to just about anything to avoid that outcome. Thus, it is easy to believe that Pidgeon accepted the plea *because of* his counsel's incorrect advice. Pidgeon's testimony is also supported by his addition of the letters "T," "D," and "C" (standing, he says, for "threat, duress, and coercion") to his signature on the plea agreement form. Moreover, Pidgeon's testimony is especially credible because he faces the exact same decision today as he did when he initially accepted the plea deal—to either spend ten years in prison pursuant to the plea or to proceed to trial. The only difference is that Pidgeon is now able to make that decision based on correct information. So, Pidgeon's claim that he would have rejected the plea deal had he had the correct information is credible, as he makes that exact same determination today; unlike a defendant who has *rejected* a plea deal and then los-

es at trial, Pidgeon has no incentive to lie about his earlier choice.

Regardless of whether his counsel's testimony would have helped defeat Pidgeon's case, nothing prevented respondent from calling him as a witness—or asking for a continuance in order to do so—during the evidentiary hearing. It makes little sense to penalize Pidgeon for her failure to do so.

### III. Conclusion

We AFFIRM the judgment of the district court.