In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-2631

GREGORY WILLIAMS,

*Petitioner-Appellant,*

*v.*

LEONTA JACKSON,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-7407 — **John Z. Lee**, *Judge.*

_____

ARGUED APRIL 8, 2020 — DECIDED JULY 6, 2020

_____

Before RIPPLE, BRENNAN, and SCUDDER, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Gregory Williams appeals the de-
nial of his application for federal habeas corpus relief follow-
ing convictions in Illinois state court in two separate cases for
raping two women—offenses that resulted in sentences total-
ing 66 years' imprisonment. Williams contends that his de-
fense attorney violated his Sixth Amendment right to the ef-
fective assistance of counsel by not only advising him to reject

a 41-year plea offer, but also failing to inform him of his maximum sentencing exposure if he proceeded to trial in both cases and lost. An Illinois court rejected these claims, concluding that Williams failed to provide any information pertinent to one of the two cases that gave rise to the 41-year plea offer. Without knowing anything about that case, the Illinois court reasoned, there was no way to assess defense counsel's performance and thus no way to conclude that Williams received ineffective assistance. Finding the Illinois court's conclusion reasonable, the district court denied federal habeas relief. We affirm.

## I

### A

Around 7:00 a.m. on January 9, 2006, a woman named J.H. was walking near the intersection of Adams Street and Lavergne Avenue in Chicago when a stranger, Gregory Williams, approached her, grabbed her arm, told her he had a gun, and instructed her to accompany him to his apartment. J.H. complied. While walking with Williams, J.H. passed both her brother and mother, but signaled no distress and otherwise gave them no indication that she was being held against her will.

Upon arriving at the apartment, Williams put a knife to J.H.'s neck and told her to undress. He then raped her three times while smoking crack cocaine. Williams apologized, allowed J.H. to dress, and brought his baby in from the next room for J.H. to hold. He gave her a phone and told her she could call the police, but J.H. declined, later testifying that she thought Williams was just testing her.

Later that day J.H. reported the assault to police, who took her to a hospital. Following Williams's arrest, J.H. identified him in a line-up. For his part, Williams agreed to a police interview and admitted that he had approached J.H., asked her to come to his apartment, and forced her to have sex with him against her will.

An Illinois grand jury indicted Williams on 37 counts of sexual assault and kidnapping. At the time, Williams also faced charges in a second criminal case involving similar conduct but a different victim, S.D. The same trial judge initially presided over both cases.

At a pretrial conference, Williams's counsel expressed interest in requesting a conference under Illinois Supreme Court Rule 402(d). At a so-called 402 conference, the parties advise the court of the facts and their views of the case, after which the court makes a recommendation as to the appropriate sentence the defendant should serve. See Ill. Sup. Ct. R. 402. The defense and the prosecution are free to accept that sentence by agreeing to a guilty plea or to reject it and proceed to trial. See *id.*

Williams's counsel focused her efforts on mounting an argument that he was "guilty but mentally ill" (often shorthanded as GBMI) under Illinois law. She requested a clinical exam to assess Williams's mental fitness, but both experts she consulted opined that he was legally sane at the time of his offense against J.H. Counsel's comments in open court in the weeks leading to the 402 conference suggested that she did not fully understand the nature of GBMI. For example, at a February 2008 conference, counsel stated that she planned to present a "defense" of GBMI. As Judge Joseph Claps explained, however, GBMI is not a defense under Illinois law

and does not affect a defendant's culpability or the length of his sentence. Rather, a determination that a defendant is guilty but mentally ill affects only whether he receives mental health treatment in custody. See 730 ILCS 5/5-2-6(a) (stating that where a defendant has been found GBMI, "[t]he court may impose any sentence upon the defendant which could be imposed pursuant to law upon a defendant who had been convicted of the same offense without a finding of mental illness").

The trial court held the 402 conference on March 11, 2008. Just before the conference began, Williams's counsel repeated her intention to argue that he was GBMI. Judge Claps again asked her what difference that would make to Williams's sentence because GBMI "really is only a direction to the Department of Corrections to get [Williams] mental health treatment. It doesn't change anything."

In keeping with established practice, Judge Claps held the 402 conference off the record and then went back on the record to recommend a sentence of 20 years' imprisonment "in the first case" and 21 years in the second, for a total of 41 years. (It is unclear whether "the first case" referred to J.H.'s case or S.D.'s case.) After consulting with Williams, his defense attorney informed the court that he rejected the plea offer and requested a bench trial in the J.H. case, at which she planned to present what she called the "affirmative" or "pseudo-affirmative defense" of GBMI.

At the ensuing bench trial, defense counsel did little to contest the sexual assault charges against Williams. Indeed, the parties stipulated not only to the admission of J.H.'s lineup identification, but also to forensic evidence showing that the semen recovered from J.H. matched Williams's DNA. The

state presented several witnesses, including J.H., her mother, one of the detectives who interviewed Williams following his arrest, as well as expert witness Dr. Roni Seltzberg of the Circuit Court's Forensic Clinical Services, who had examined Williams twice and opined that he was legally sane at the time he raped J.H. Meanwhile the defense called only one witness, Dr. Carl Wahlstrom, who testified that Williams had a long history of mental illness, schizophrenia, and a low IQ, but agreed that he was legally sane at all relevant times. Williams's counsel also argued that the state had not met its burden on the kidnapping charge, emphasizing that J.H. made little effort to get away and did not cry out to her mother or brother when she passed them on the street.

The trial court found Williams guilty of six counts of aggravated sexual assault, one count of aggravated kidnapping, and one count of kidnapping. It sentenced Williams to consecutive 22-year terms of imprisonment for each of the three rape charges and concurrent 22-year terms for the remaining counts, for a total of 66 years in prison. The court further found that Williams was not GBMI.

Still pending was Williams's other case—the one involving S.D.—which originated with Judge Claps but was transferred to a new judge after Williams was convicted in J.H.'s case. Williams ultimately pleaded guilty in S.D.'s case and was sentenced to three consecutive 10-year terms of imprisonment (30 years total), to be served concurrently with his 66-year sentence in J.H.'s case.

The Illinois Appellate Court affirmed Williams's conviction and sentence in J.H.'s case, and the Illinois Supreme Court denied his petition for leave to appeal.

B

Williams next sought postconviction relief in state court. His *pro se* petition argued that his counsel provided constitutionally ineffective assistance in advising him to reject the 41-year sentence Judge Claps recommended after the 402 hearing. The postconviction trial court applied the familiar test for ineffective assistance from *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Williams had to make the twofold showing that his counsel's performance was deficient, or "fell below an objective standard of reasonableness," *id.* at 687–88, and that the errors prejudiced him because there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

Williams alleged that his trial counsel's performance fell short in two ways. First he contended that she failed to inform him of the consequences of rejecting the 41-year sentence and proceeding to trial in the J.H. and S.D. cases. Williams claimed that his attorney "wouldn't answer [his] questions, or take reasonable steps to ensure [he] possessed a basic knowledge or understanding of the numerous crimes, counts and actions" against him, and that after the 402 hearing, she "never advised [him] as to the possible consequences of rejecting the plea offer."

Trial counsel's failings were significant, Williams insisted, because of the consecutive nature of the sentences he faced under Illinois law. He was charged in the J.H. case with three counts of criminal sexual assault and multiple counts of kidnapping, each of which carried 6 to 30 years' imprisonment. Illinois law imposes mandatory consecutive sentences for criminal sexual assault and permits consecutive sentences in

other circumstances. See 730 ILCS 5/5-8-4(d)(2); 730 ILCS 5/5-8-4(a)–(c), (e). Stacking his sentences for sexual assault and kidnapping, Williams argued that he faced at least 24 to 120 years' imprisonment in J.H.'s case—more than the 20 or 21 years recommended at the 402 conference—and that his trial counsel failed to inform him of this sentencing exposure.

Williams alleged that his counsel performed deficiently in another way, too. Separate and apart from her alleged failure to inform him of the sentences he faced if convicted of kidnapping and raping J.H., Williams claimed that her recommendation to reject the 41-year plea offer was ill-advised. According to Williams, his counsel told him that under a plea agreement he would have to serve 85% of "the largest term" (21 years) and that this was "too much time" because "the State had no evidence." Williams argued that this advice was unreasonable given the strength of the state's evidence against him in J.H.'s case, including his admission to the rapes, J.H.'s identification of him as the offender, and the DNA evidence linking him to the crimes.

Williams insisted that his counsel's errors prejudiced him because he otherwise would have accepted the 41-year plea recommended by Judge Claps at the 402 conference. As Williams put it, "it is a far cry to contend that had [he] been fully cognizant and appreciative of the potential detriment following a finding of guilt, he would have knowingly rejected the Court's merciful offer."

Noticeably absent from Williams's petition for postconviction relief, however, was any meaningful information about the case involving S.D. He did not recount the advice he received in that case, let alone explain why he pleaded guilty in the S.D. case while proceeding to trial in the J.H. case. The

postconviction record lacked even basic information about S.D.'s case—not the strength of the state's evidence, nothing about any defenses Williams may have had, not even the particular facts of the offense.

The Illinois court denied Williams's petition as "frivolous and patently without merit." It found his claim that his trial counsel had unreasonably advised him to reject a favorable plea offer too "generalized," and her view that the plea offer was "too much time" not "unreasonable or misleading." The court added that Williams had not shown enough objective evidence of prejudice—"that he would have accepted the plea had counsel acted differently." The court did not address Williams's other claim of deficient performance—that his counsel failed to even inform him of the consequences of rejecting the plea offer and proceeding to trial.

The Illinois Appellate Court affirmed the denial of post-conviction relief. Like the trial court, the appellate court did not directly address Williams's claim that defense counsel had failed to inform him of the sentence he faced at trial, instead focusing on his claim that she told him the plea offer was "too much time." The court held that this advice did not constitute deficient performance. For one thing, the court said, Williams's counsel could have reasonably thought that he might be acquitted of the aggravated kidnapping charge—which could have brought his minimum sentence down to 18 years, less than the 20 or 21 years recommended at the 402 conference. Counsel had cross-examined J.H. to this effect at trial in an effort to establish that she never attempted to escape Williams's grasp.

Even more central to the state court's affirmance was that the 41-year plea offer pertained to two separate cases—J.H.'s

case and S.D.'s case. Yet recall that Williams's postconviction petition related only to J.H. and said nothing of S.D. The state court highlighted this gap in the record, stressing that Williams "ha[d] not described the offense [in S.D.'s case] in any detail, much less shown that counsel's advice to reject the offer was unsound as to the second offense." This omission doomed Williams's claim of deficient performance, the court explained, because it was "entirely possible that counsel advised [him] to reject the plea offer, because he stood a chance of acquittal or a lesser sentence in the second case."

Having rejected Williams's claim for failure to show deficient performance, the Illinois Appellate Court declined to consider prejudice, though it expressed skepticism that he had established that prong either. The appellate court therefore denied postconviction relief, and the Illinois Supreme Court denied leave to appeal.

C

His state remedies exhausted, Williams invoked 28 U.S.C. § 2254 and sought habeas relief in federal court. To obtain relief, Williams had to establish that the Illinois Appellate Court's decision denying postconviction relief reflected an unreasonable application of federal law or was based on an unreasonable factual determination. See *id.* § 2254(d)(1)–(2).

Unable to find that the state court's decision was unreasonable, the district court denied relief. It began by focusing on trial counsel's advice to Williams to reject the 41-year plea offer, which the Illinois Appellate Court held did not constitute deficient performance. The district court found the state court's conclusion reasonable. It underscored the dearth of information in the record about S.D.'s case and reasoned that

rejecting the plea might have seemed like "the better net decision for both cases."

The district court then turned to Williams's allegation that his defense attorney failed to inform him of the sentences he faced at trial. While observing that the state court "did not directly address this aspect of Williams's claim," the district court nevertheless continued to give the state court deference under § 2254(d), applying the principle that it may "presume[] that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Through this lens the district court again concluded that the state court's decision rejecting Williams's claim was reasonable. It explained that the allegations Williams advanced in his postconviction petition were "sufficiently vague and contradictory" that "a fairminded jurist could find the evidence insufficient" to support his claim.

As the district court recognized, the state court held only that Williams failed to show deficient performance without addressing the prejudice prong of his ineffective assistance claim. The district court nevertheless proceeded to evaluate prejudice *de novo* and concluded that Williams could not satisfy that prong either—an additional basis for denying him habeas relief. The district court again highlighted the "gaping hole in the record" about S.D.'s case, a gap that impeded its ability to assess the 41-year package deal offered to Williams for both rape cases—the J.H. and S.D. cases. For all it knew, the court said, "the evidence was scant on the other case and acquittal was likely, making the overall plea" less attractive.

The district court likewise rejected Williams's request for an evidentiary hearing. Williams had argued that such a

hearing was necessary to develop the facts of his ineffective assistance claim—to determine why his trial counsel advised him to reject the plea offer and what information she had or had not given him about the sentence he faced at trial. In evaluating this request, the district court applied 28 U.S.C. § 2254(e)(2), which allows a hearing for a petitioner who failed to develop the factual basis of his claim in state court, but only if he presents new evidence of his innocence. Because Williams never alleged that a hearing would establish his innocence, the court held that he was ineligible for an evidentiary hearing.

Williams now appeals.

## II

### A

Like the district court, we begin with the decision of the Illinois Court of Appeals, the last state court to consider Williams's ineffective assistance claim on the merits in a reasoned opinion. See *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Congress has authorized us to grant habeas relief only if that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2).

"If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Section 2254(d) requires Williams to show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. We afford the state court great deference because habeas corpus serves as a "'guard

against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

A defendant has a Sixth Amendment right to effective assistance of counsel in considering whether to accept a plea offer. See *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). As the state court and the district court recognized, to establish the denial of this right, a petitioner like Williams must show that his counsel's performance fell below a reasonable standard and that counsel's errors prejudiced him. See *Strickland*, 466 U.S. at 687–88, 694. An attorney's advice to reject a plea "is deficient if the attorney grossly mischaracterizes the evidence or advises a client to reject a plea offer and go to trial in the face of overwhelming evidence and no viable defenses." *Torres-Chavez v. United States*, 828 F.3d 582, 585 (7th Cir. 2016). And to show prejudice from this type of error, a defendant "must demonstrate a reasonable probability [he] would have accepted the earlier plea offer" if his counsel had not performed deficiently. *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

It is especially difficult to prevail on an ineffective assistance of counsel claim in federal habeas because *Strickland* and § 2254(d) together create "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

B

Recall the crux of the Illinois Appellate Court's decision: it denied Williams postconviction relief because the factual void in S.D.'s case meant that he could not show deficient performance. The Illinois court stopped there and explicitly refrained from considering the prejudice prong. The district

court found the state court's decision reasonable but also proceeded further and, in the alternative, considered the prejudice prong of the ineffective assistance claim *de novo*. It concluded that Williams had not met his burden on that front either.

No matter which part of the inquiry we consider—deficient performance or prejudice—we come to the same conclusion: the state court's decision did not reflect an unreasonable application of the controlling legal standards announced by the Supreme Court in *Strickland* and *Frye.*

Foremost, we know much too little about the case involving S.D. and the advice Williams received from his counsel in that case. The record is all but silent on that front. For his part, Williams points to the little information we do have. We know that Judge Claps heard about both cases at the 402 conference and recommended a similar sentence in each—20 years' imprisonment in one case and 21 years in the other. And we know that Williams ultimately pleaded guilty in S.D.'s case to two counts of aggravated sexual assault and one count of aggravated kidnapping—charges similar to the ones he faced in J.H.'s case.

This information is too paltry, though, to say with any certainty that Williams's trial counsel performed deficiently in J.H.'s case. Williams gave no indication of the respective strength of the parties' cases—whether the prosecution had forensic evidence or victim testimony, for example, and whether he could have countered with a viable defense or a credible alibi. We do not even know the particulars of Williams's offense conduct in S.D.'s case, let alone the answers to these questions. Absent such information, we have no meaningful way of evaluating counsel's advice to Williams to reject

the 41-year sentence for both cases. Half of the equation remains empty. As the district court observed, Williams may have stood a chance of acquittal or a lighter sentence in S.D.'s case, making the combined 41-year plea offer a bad bargain. We have no way of knowing for sure.

Williams begs to differ. He contends that the information we do have about S.D.'s case—the similarity of the charges and recommended sentence—lends itself to an inference that conviction was likely in both the J.H. and S.D. cases. Williams also highlights the part of his petition where he alleged that his counsel "never advised [him] as to the possible consequences of rejecting the plea offer." That plea offer related to both cases, Williams's argument goes, so we should interpret his petition to allege that he received inadequate advice as to both.

We need not reach a conclusion on whether Williams met his burden of showing deficient performance. Section 2254(d) requires us to ask merely whether the state court's answer to that question reflected an unreasonable application of federal law or was based on an unreasonable determination of the facts. On this record, the Illinois Appellate Court sensibly concluded that it had too little information to judge the advice Williams received in connection with the 41-year plea offer. The inferences that Williams asks us to draw from his petition may be fair, but so are those made by the Illinois Appellate Court. We therefore cannot say that the state court unreasonably applied the controlling legal standard when it rejected Williams's ineffective assistance claim for failure to show deficient performance.

The state court stopped at deficient performance. The district court went further, however, and provided an alternative

basis for denying Williams's claim for habeas relief: Williams had not shown prejudice. Because the state court did not decide the prejudice question, the district court evaluated it *de novo*, as do we. See *Quintana v. Chandler*, 723 F.3d 849, 853 (7th Cir. 2013) ("[W]hen a state court makes the basis for its decision clear, [§] 2254(d) deference applies only to those issues the state court explicitly addressed.") (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

To show prejudice Williams had to establish a reasonable probability that but for his attorney's errors, he would have accepted the 41-year plea offer at the 402 conference. See *Frye*, 566 U.S. at 147. Williams's failure to supply information about S.D.'s case impedes this inquiry as well. Without even a superficial familiarity with that case, we cannot know with confidence that Williams would have accepted a combined 41-year plea. For this reason, too, Williams's ineffective assistance claim fails when we consider his allegation that his counsel failed to inform him of the sentencing exposure he faced if convicted in both the J.H. and S.D. cases. Even if we assumed deficient performance, we lack the information necessary to measure the probability that he would have accepted the plea under other circumstances. See *id.* at 150 (observing that "in some cases defendants must show more than just a guilty plea to a charge or sentence harsher than the original offer" to establish prejudice).

## III

A final issue remains. Williams requested an evidentiary hearing on his ineffective assistance claim. We agree with the district court's decision to deny that request but reach that conclusion by traveling a different path.

The operative standard for whether a habeas petitioner is entitled to an evidentiary hearing comes from 28 U.S.C. § 2254(e)(2), which provides that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."

The district court made quick work of Williams's request, explaining that because he made no claim of innocence, he was ineligible for an evidentiary hearing. But focusing on the innocence requirement skims over an issue more fundamental and salient to Williams's case. That requirement applies only if the petitioner "has failed to develop the factual basis of a claim in State court proceedings." *Id.* Section 2254(e)(2) does not prohibit a hearing where the petitioner's failure to develop the factual basis for his claim was beyond his control. Put differently, § 2254(e)(2) does not bar an evidentiary hearing "unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence requires that a prisoner "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court," even if those efforts are unsuccessful, *id.* at 435, and "at a minimum, [sought] an evidentiary hearing in state court," *id.* at 437.

Whether Williams exercised diligence in developing the factual basis for his claim is a close and difficult question, in no small part because he did seek an evidentiary hearing in

state court. In his state postconviction petition, Williams requested a hearing, described the basis for his claim, and included an affidavit swearing to the truth of his allegations. The state appellate court recognized that the only evidence he could present of private discussions with his attorney would be his own testimony and his counsel's, and that at the pleading stage, he could be excused for failing to present an affidavit by his counsel. If J.H.'s case were the only one at issue, Williams's efforts may have been enough to show diligence. See *Avila v. Richardson*, 751 F.3d 534, 537 (7th Cir. 2014) (finding diligence because the petitioner "consistently presented his claim at each stage of post-conviction proceedings"); *Davis v. Lambert*, 388 F.3d 1052, 1061 (7th Cir. 2004) (finding diligence where a petitioner's *pro se* petition requested an evidentiary hearing, described the hypothetical content of testimony he wanted his counsel to present at trial, and verified his allegations with a sworn affidavit).

In the end, however, we conclude that Williams failed to show the diligence necessary to obtain an evidentiary hearing for the same reason his claim fails on the merits. Williams had to do more than allege that his trial counsel provided ineffective assistance regarding the 41-year plea offer for two cases. He had to color in that claim with information relevant to *both* the J.H. and S.D. cases. While we recognize the limitations a prisoner may face in filing a postconviction petition *pro se*, that does not explain the wholesale absence of information about S.D.'s case. As the defendant, Williams presumably knew something about the state's charges and evidence against him, his potential defenses, or at least the advice he received in connection with his plea. He could have conveyed this information in general terms, or at the very least, explained why it was omitted. Instead the Illinois Appellate

Court was left with a factual void about S.D.'s case. It chose to affirm the denial of his habeas claim, and reasonably so.

Looking at the same record, we cannot say that Williams satisfied the standards for receiving an evidentiary hearing in federal court. To be sure, a hearing may have helped Williams flesh out the allegations he did make—those specific to J.H.'s case. There is little doubt that he raised a serious question about the adequacy and quality of the advice he received in that case. But our inquiry is not whether a hearing would have helped Williams present evidence surrounding J.H.'s case alone. By its terms, § 2254(e)(2) focuses our inquiry on whether he was diligent in developing the factual basis for the entirety of his ineffective assistance claim. Doing so required him to provide facts about S.D.'s case as well. Properly framed, the question whether Williams is entitled to an evidentiary hearing depends on whether he exercised diligence, which he did not do. We therefore agree with the district court that Williams is entitled neither to habeas relief nor to an evidentiary hearing.

For these reasons, we AFFIRM.