In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3889

ISRAEL C. RAMIREZ,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 11-cv-719-JPG — **J. Phil Gilbert**, *Judge.*

ARGUED AUGUST 5, 2015 — DECIDED AUGUST 25, 2015

Before WOOD, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

WOOD, *Chief Judge*. In 2008 Israel Ramirez pleaded guilty to possessing marijuana with intent to distribute. His presentence investigation report classified him as a career offender based on two earlier state convictions for assault. Despite the fact that his convictions were for "intentional, knowing, *or* reckless" assault, counsel did not object to the PSR's charac-

terization, and the district court sentenced Ramirez as a career offender. In so doing, the court treated the Texas convictions as crimes of violence under U.S.S.G. § 4B1.2(a)(2)'s residual clause, which defines as a "crime of violence" for purposes of career-offender status at sentencing any federal or state offense punishable by imprisonment of more than one year "that otherwise involves conduct that presents a serious potential risk of physical injury to another."

Ramirez retained new counsel and moved to vacate his sentence under 28 U.S.C. § 2255, arguing that sentencing counsel was ineffective for failing to object to the career-offender designation. The district judge denied the motion and, because postconviction counsel failed to keep Ramirez informed about the postconviction proceedings, Ramirez did not submit a timely request for a certificate of appealability. He tried filing a late request, but when it was dismissed for lack of jurisdiction, he moved under Federal Rule of Civil Procedure 60(b)(6) for relief from the judgment. He argued that postconviction counsel was ineffective for causing him to miss the appeal deadline (among other reasons). The district judge denied the motion, on the belief that there is a rigid rule under which there is no right to counsel on collateral review. See *Coleman v. Thompson*, 501 U.S. 722, 752 (1991). This would have been correct before the Supreme Court's decisions in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In those two decisions, however, the Court significantly changed its approach to claims of ineffective assistance of counsel at initial-review collateral proceedings. We conclude that the argument Ramirez raises is cognizable under Rule 60(b), see *Gonzalez v. Crosby*, 545 U.S. 524 (2005), and thus that a remand is re-

quired so that the district court may consider the merits of his contentions.

**I**

This appeal arises out of a series of events that began with Ramirez's two convictions in Texas. According to an offense report tendered by the prosecution at Ramirez's first Texas plea hearing, Ramirez had run in front of his wife's moving car, opened the passenger door, and gotten into the car. When his wife stopped to wave down a police officer, he grabbed her by her hair and punched her in the mouth. According to the offense report prepared for the second Texas prosecution, Ramirez went to his wife's house and banged on her door. When she refused to let him in, he broke the house windows and her car windshield, and then kicked in the front door, pulled her hair, and knocked her to the floor. He grabbed her arm and started to drag her away. These incidents led to two separate indictments for "intentionally, knowingly, or recklessly" causing "bodily injury" to his wife by "striking her with his hand"; Ramirez pleaded guilty in both cases. See TEX. PENAL CODE § 22.01(a)(1) (1999).

In 2008 Ramirez pleaded guilty to the conviction that gives rise to this proceeding—possessing marijuana with intent to distribute. See 21 U.S.C. § 841(a)(1). Ramirez's presentence investigation report listed, among other convictions, the two incidents in which he had assaulted his wife; it specified that he had been charged with assault to a family member for striking his wife with his hand. The probation officer concluded that these two "crimes of violence" rendered Ramirez a career offender. See U.S.S.G. §§ 4B1.1(a); 4B1.2(a). Ramirez's lawyer did not contest the probation officer's conclusion.

In the course of determining Ramirez's advisory sentencing range, the district court agreed with that assessment. The career-offender designation resulted in a guidelines imprisonment range of 262 to 327 months. (Without career-offender status, the range would have been 151 to 188 months. See U.S.S.G. SENT. TABLE (2008).) The court sentenced Ramirez to a within-guidelines term of 300 months' imprisonment.

On appeal, Ramirez's trial counsel moved to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). We rejected that motion on the ground that a colorable challenge to Ramirez's career-offender classification existed. *United States v. Ramirez*, No. 09-1815 (7th Cir. Nov. 4, 2009). The government conceded error, admitting that the documents before the district court did not establish that Ramirez had been convicted of crimes of violence. Brief for Appellee at 12, *United States v. Ramirez*, 606 F.3d 396 (7th Cir. 2010) (No. 09-1815). Rejecting that concession, we affirmed the conviction. We first held that the Texas assault statute was divisible (meaning that there were three ways in which it might be violated—through intentional, knowing, or reckless behavior). On appeal, however, the plain-error standard applied. That left Ramirez with the burden of showing that he had been convicted under the "reckless" branch of the statute. He failed to do so for lack of evidence, and so his sentence for the drug offense stood. *United States v. Ramirez*, 606 F.3d 396, 398 (7th Cir. 2010).

At that point, Ramirez obtained new counsel, who filed a motion under 28 U.S.C. § 2255 asserting, as relevant here, that trial counsel was ineffective at sentencing for failing to object to Ramirez's classification as a career offender. The

district judge denied the motion and declined to issue a certificate of appealability because, he wrote, Ramirez (still) had not produced any documents to show that he had been convicted of *reckless* assault and thus had not shown that he was prejudiced by counsel's omission. The proceeding went awry, however, when postconviction counsel let Ramirez down in three ways: he did not inform Ramirez of the court's decision; he failed to file any postjudgment motions; and he failed to file a notice of appeal.

Once he learned that counsel had deserted him, Ramirez filed an untimely *pro se* notice of appeal from the section 2255 motion denial; we dismissed for lack of appellate jurisdiction. *Ramirez v. United States*, No. 13-3511 (7th Cir. Jan. 21, 2014); see 28 U.S.C. § 2107(a); *Bowles v. Russell*, 551 U.S. 205, 210–11 (2007). Ramirez then moved to vacate the district court's judgment under Federal Rule of Civil Procedure 60(b)(6), arguing that the ineffectiveness of his postconviction counsel—who had failed to request any of the Texas-court documents and worse, had deserted him—constituted an extraordinary circumstance warranting the reopening of the judgment. The district judge denied the Rule 60(b)(6) motion because, he wrote, the right to counsel does not extend to proceedings under section 2255, and because Ramirez still had not shown that he was prejudiced by any of trial counsel's omissions because he never produced any documents showing he had been convicted of nonviolent assault. Ramirez appealed the denial of his Rule 60(b)(6) motion, and this court certified for appeal the question whether trial counsel was ineffective at sentencing. We also instructed the parties to address whether the district court abused its discretion in denying Ramirez's Rule 60(b)(6) motion in light of *Trevino* and *Martinez*.

## II

Ramirez argues that the district court did commit an abuse of discretion when it denied his Rule 60(b)(6) motion. One way in which a court may take a decision that lies outside the boundaries of its discretion is by basing that decision on a material error of law. Ramirez asserts that the district court incorrectly relied on *Coleman*'s absolute rule that counsel's performance on a postconviction motion can never justify relief from a judgment, rather than on *Trevino* and *Martinez*. Relying on such cases as *Nash v. Hepp*, 740 F.3d 1075 (7th Cir. 2014), the government replies that these new cases at most amount to a mundane change in the law that does not amount to an extraordinary circumstance for purposes of Rule 60(b)(6). It also argues that *Trevino*, *Martinez*, and *Maples v. Thomas*, 132 S. Ct. 912 (2012) (a third case in the new line), apply only to petitions for relief filed by state prisoners under 28 U.S.C. § 2254, not to motions filed by federal prisoners under 28 U.S.C. § 2255.

### A

The first question we must address is whether Ramirez was entitled to use a Rule 60(b) motion, or if he has in reality filed an unauthorized second or successive petition without the necessary permission of this court. See 28 U.S.C. §§ 2244, 2255(h). If this was a proper use of Rule 60(b), the next question is whether Ramirez has shown enough to earn a consideration of his arguments on the merits.

We are satisfied that Ramirez's motion was not a disguised second or successive motion under section 2255, and thus may be evaluated on its own merit. Ramirez is not trying to present a new reason why he should be relieved of ei-

ther his conviction or his sentence, as provided in 28 U.S.C. § 2255(a). He is instead trying to reopen his existing section 2255 proceeding and overcome a procedural barrier to its adjudication. Recall that on direct appeal this court found enough merit in Ramirez's claims that we rejected counsel's *Anders* submission and required the case to go forward. Appellate counsel never obtained the relevant records from the Texas courts, however, and so the appeal failed for lack of proof. When Ramirez sought to remedy these failures in a motion under section 2255, postconviction counsel failed to remedy that critical omission, despite the central role that it had played in our disposition of the direct appeal. We do not know if that omission was intentional or not, although if the records had been unfavorable to Ramirez, it is hard to see why the prosecutor did not obtain them. Most importantly, postconviction counsel abandoned Ramirez on appeal, thus depriving him of the opportunity to pursue his Sixth Amendment claims.

*Gonzalez* held that in rare circumstances, a motion under Rule 60(b) may be used by a prisoner. There the Court confirmed that "Rule 60(b) has an unquestionably valid role to play in habeas cases." 545 U.S. at 534. But that role is restricted. The "movant seeking relief under Rule 60(b)(6) [must] show extraordinary circumstances justifying the reopening of a final judgment." *Id.* at 535 (internal quotation marks omitted). A change in law alone will not suffice for this purpose. *Id.* at 536 (change in Supreme Court's interpretation of the AEDPA statute of limitations did not qualify); *Nash*, 740 F.3d at 1078; *Hill v. Rios*, 722 F.3d 937, 938 (7th Cir. 2013); see also *Cox v. Horn*, 757 F.3d 113, 115 (3d Cir. 2014) ("for relief to be granted under Rule 60(b)(6), 'more' than the concededly important change of law wrought by *Martinez* is

required—indeed, much 'more' is required"); but see *Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) (stating that change in decisional law effected by *Martinez* did not justify use of Rule 60(b); not discussing any other equitable considerations).

We agree with the Third Circuit's approach in *Cox,* in which it rejected the absolute position that the Fifth Circuit's *Adams* decision may have reflected, to the effect that intervening changes in the law *never* can support relief under Rule 60(b)(6). The Third Circuit held instead that "intervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)." 757 F.3d at 121. It explained that it had "long employed a flexible, multifactor approach to Rule 60(b)(6) motions, including those built upon a postjudgment change in the law, that takes into account all the particulars of a movant's case." *Id.* at 122. In fact, it pointed out, this position may not be inconsistent with that of the Fifth Circuit, which reviewed other equitable factors in a later case similar to *Adams* before rejecting the petitioner's claim. See *Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013).

Rule 60(b)(6) is fundamentally equitable in nature. See *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988); *Di Vito v. Fidelity & Deposit Co. of Md.*, 361 F.2d 936, 939 (7th Cir. 1966); see also 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2857 at 321 (3d ed. 2012). It thus requires the court to examine all of the circumstances, bearing in mind the need for the party invoking the rule to demonstrate why extraordinary circumstances justify relief. Pertinent considerations include, though are not limited to, a change in the Supreme Court's approach to the fundamental rules

for deciding habeas corpus cases; the diligence of the petitioner; whether alternative remedies were available but bypassed; and whether the underlying claim is one on which relief could be granted.

In *Nash*, for example, we noted a number of factors that showed collectively that extraordinary circumstances for purposes of Rule 60(b)(6) did not exist, despite the change in law brought about by *Martinez*, *Maples*, and *Trevino*. Nash could have appealed notwithstanding the actions of his counsel, because the court itself instructed him about the proper measures to take. (Wisconsin law treats postconviction relief in an unusual way, insofar as it allows defendants to raise a claim of ineffectiveness of counsel simultaneously with a direct appeal.) Where Nash "easily could have remedied counsel's omission and started the plenary postconviction process anew," 740 F.3d at 1079, there was no abuse of discretion in denying Nash's motion under Rule 60(b)(6). Similarly, in *Hill* the petitioner chose not to file a petition for rehearing with this court or a petition for certiorari with the Supreme Court, after he failed to persuade a panel that his remedy under section 2255 was inadequate. As we put it there, "[a] litigant who bypasses arguments on appeal cannot depict his own omission as an 'extraordinary' event that justifies post-judgment relief." 722 F.3d at 938–39. Furthermore, Hill had never alerted this court during his earlier appeal that he had filed an earlier motion under section 2255 and that was why he was seeking to take advantage of the safety-valve clause of section 2255(e). See generally *Webster v. Daniels,* 784 F.3d 1123, 1135–39 (7th Cir. 2015) (en banc). It ill behooved him to seek a new opportunity to raise points that he could have advanced earlier. We thus found no

abuse of discretion in denying Hill's motion under Rule
60(b)(6).

*Nash* and *Hill* follow *Gonzalez*'s admonition that extraor-
dinary circumstances will exist only rarely. At the same
time, however, as the Third Circuit said in *Cox,* "rarely" does
not mean "never." Like the petitioner in *Nash*, Ramirez
points to his abandonment by counsel as the extraordinary
circumstance that justifies re-opening his section 2255 pro-
ceeding. Unlike Nash, however, the remainder of the equi-
ties in Ramirez's case do not undermine his application for
relief. No one—not a court, not his lawyer—informed him
about an alternative path to relief after his postconviction
lawyer abandoned him and left him with only a jurisdiction-
ally-out-of-time appeal. Ramirez did not conceal pertinent
information from the court. The district court's decision on
his Rule 60(b)(6) motion, dated November 19, 2013, was
based on a clear error of law: the court dismissed his effort to
raise a claim about the assistance of postconviction counsel
with these words:

> Next, Ramirez argues he is entitled to relief because
> his habeas counsel was ineffective. The right to effec-
> tive assistance of counsel, however, does not extend
> to § 2255 proceedings. *Cannon v. United States*, 326 F.
> App'x 393, 395 (7th Cir. 2009) (citing 28 U.S.C. §
> 2254(i)).[1] As such, Ramirez is not entitled to relief
> based on his counsel's performance.

---

[1] We note that section 2255 does not include any counterpart to 28
U.S.C. § 2254(i), which provides that "[t]he ineffectiveness or incompe-
tence of counsel during Federal or State collateral post-conviction pro-
ceedings shall not be a ground for relief in a proceeding arising under
section 2254." Thus, if anything, the right that Ramirez is trying to assert

At the time the court wrote those words, all three of the Supreme Court decisions on which Ramirez relies were on the books: *Maples* was handed down on January 18, 2012; *Martinez* on March 20, 2012; and *Trevino* on May 28, 2013. The court's error of law was therefore plain.

B

The change in law between *Coleman,* on the one hand, and *Martinez, Maples,* and *Trevino* on the other, plays only a part in our evaluation of Ramirez's Rule 60(b)(6) motion. The ineffectiveness of his postconviction attorney is the other critical point. *Martinez* held that the procedural default that occurred when Martinez's postconviction counsel did not raise a claim of ineffective assistance of counsel in his state collateral proceeding would not bar his petition under 28 U.S.C. § 2254, where "the state collateral proceeding was the first place to challenge his conviction on grounds of ineffective assistance." 132 S. Ct. at 1313. The Court explained that "if, in the [State's] initial-review collateral proceeding, there was no counsel *or counsel in that proceeding was ineffective,*" procedural default would not "bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial." *Id.* at 1320 (emphasis added). In *Martinez,* state law required the petitioner to wait until the initial-review collateral proceeding before raising such a claim. A year later, in *Trevino*, the Court extended *Martinez*'s holding to cases in which the state did not *require* defendants to wait until the postconviction stage, but "[t]he structure and design of the

should be easier to maintain under section 2255. It is also notable that *Maples*, *Martinez*, and *Trevino* were all decided under section 2254, notwithstanding the language of subpart (i).

[state] system in actual operation … [made] it virtually impossible for an ineffective assistance claim to be presented on direct review." 133 S. Ct. at 1915. The question is whether these holdings apply to some or all federal prisoners who bring motions for postconviction relief under section 2255. We already have answered this in the affirmative, in *Choice Hotels Intern., Inc. v. Grover*, 792 F.3d 753 (7th Cir. 2015), where we wrote that "[a]lthough *Maples* and *Holland* [*v. Florida*, 560 U.S. 631 (2010)] were capital cases, we do not doubt that their holdings apply to all collateral litigation under 28 U.S.C. § 2254 or § 2255." *Id.* at 755. A closer look at the issue convinces us that this position was correct.

In *Massaro v. United States*, 538 U.S. 500 (2003), the Supreme Court considered the case of a man who did not raise any claim relating to ineffectiveness of trial counsel on his direct appeal, and so was trying to raise such an argument in a motion under section 2255. The United States argued that the ineffectiveness claim was procedurally defaulted, because Massaro could have raised it on direct appeal. The Supreme Court rejected that position and held instead that there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal, even if new counsel handles the direct appeal and even if the basis for the claim is apparent from the trial record. *Id.* at 503–04. Indeed, the Court criticized the practice of bringing these claims on direct appeal, because "the issue would be raised for the first time in a forum not best suited to assess those facts." *Id.* at 504. This court has been equally if not more critical of the practice of trying to raise ineffective assistance claims on direct appeal:

> Raising ineffective assistance on direct appeal is imprudent because defendant paints himself into a corner. We've explained why the contention is doomed unless the contention is made first in the district court and a full record is developed—which happens occasionally but did not happen here. Yet although the argument has trifling prospect of success, the defense has much to lose. … [W]hen an ineffective-assistance claim is rejected on direct appeal, it cannot be raised again on collateral review. …

> Ever since *Massaro* the judges of this court have regularly asked counsel at oral argument whether the defendant is personally aware of the risks of presenting an ineffective-assistance argument on direct appeal and, if so, whether defendant really wants to take that risk. We encourage counsel to discuss that subject with the defendant after argument and to consider withdrawing the contention. We asked that question at oral argument of this appeal, and counsel assured us that Flores is aware of the risks and wants the contention resolved now. That is his prerogative, foolish though the choice seems to the judiciary.

*United States v. Flores*, 739 F.3d 337, 341–42 (7th Cir. 2014). See also, *e.g.*, *United States v. Moody*, 770 F.3d 577, 582 (7th Cir. 2014) (ineffective assistance claim "should be pursued in a collateral proceeding under 28 U.S.C. § 2255"); *United States v. Bryant*, 754 F.3d 443, 444 (7th Cir. 2014) ("[a] claim of ineffective assistance need not, and usually as a matter of prudence should not, be raised in a direct appeal, where evidence bearing on the claim cannot be presented and the claim is therefore likely to fail even if meritorious"); *United*

*States v. Harris,* 394 F.3d 543, 558 (7th Cir. 2005) ("only the rarest and most patently egregious of ineffective assistance claims are appropriately brought on direct appeal"); *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995) ("we have often cautioned that a defendant who presents an ineffective assistance claim for the first time on direct appeal has little to gain and everything to lose").

Because the federal courts have no established procedure (such as the one Wisconsin uses, for instance) to develop ineffective assistance claims for direct appeal, the situation of a federal petitioner is the same as the one the Court described in *Trevino*: as a practical matter, the first opportunity to present a claim of ineffective assistance of trial or direct appellate counsel is almost always on collateral review, in a motion under section 2255. There may be rare exceptions, as *Massaro* acknowledged, for a case in which trial counsel's ineffectiveness "is so apparent from the record" that it can be raised on direct appeal or even noticed by the appellate court on its own. 538 U.S. at 508–09. But Ramirez's is not one of them.

Even if this is so, the government argues, we should not apply the principles set forth in *Martinez* and *Trevino* because they involved petitions brought under 28 U.S.C. § 2254, not motions under section 2255. The government's position finds some support in dicta from *United States v. Lee*, 792 F.3d 1021 (8th Cir. 2015). But *Lee* turned on an antecedent problem: the petitioner's motion under Rule 60(b) there was properly denied because it required precertification under section 2244(b)(3) and the court of appeals refused to take that step. The court also noted that Lee had not been diligent: instead of presenting his supporting evidence in his motion under

section 2255, he just included a footnote saying that such evidence could be provided later. 792 F.3d at *4. The court also indicated that *Martinez* and *Trevino* might be limited to section 2254 cases, but that comment was not necessary to the result.

Neither *Martinez* nor *Trevino* suggested that, for these purposes, the difference between sections 2254 and 2255 was material. What does matter is the way in which ineffective assistance of counsel claims must be presented in the particular procedural system. This varies among the states, and between the states and the federal system, but we already have explained why in the great majority of federal cases, ineffectiveness claims must await the first round of collateral review. Moreover, if review were to be more restricted on either the state or the federal side, federalism concerns suggest that it would be the state side. Most of the rules that govern petitions under section 2254 are mirrored in section 2255, including importantly the procedure for handling second or successive petitions. We can think of no reason why *Martinez* and *Trevino* should be read in the way the government advocates.

The same principles apply in both the section 2254 and the section 2255 contexts, as this case illustrates. Ramirez was effectively unable to raise his ineffective assistance claim until collateral review because he was in the typical situation of needing to develop the record more fully before he could proceed.

As we already have noted, postconviction counsel failed to notify Ramirez that the district court had denied his section 2255 motion, and this omission allowed the deadline for filing a notice of appeal to lapse. See *Ramirez v. United States*,

No. 13-3511 (7th Cir. Jan. 21, 2014). Counsel's abandonment deprived Ramirez of the ability to press his ineffective-assistance argument on appeal. See *Maples*, 132 S. Ct. at 923–24 (holding that attorney abandonment is extraordinary circumstance allowing federal court to disregard state procedural bar to hearing habeas petition); *Holland*, 560 U.S. at 652–53. We see no reason to distinguish between actions at the state level that result in procedural default and the consequent loss of a chance for federal review, and actions at the federal level that similarly lead to a procedural default that forfeits appellate review. See *Washington v. Ryan*, 789 F.3d 1041, 1047–48 (9th Cir. 2015) (explaining that counsel's abandonment can be extraordinary circumstance when abandonment resulted in lost ability to appeal); *Mackey v. Hoffman*, 682 F.3d 1247, 1253 (9th Cir. 2012) (relief available under Rule 60(b)(6) when federal habeas corpus petitioner has been grossly neglected by counsel "in a manner amounting to attorney abandonment").

C

All that remains is to determine whether the argument left hanging after counsel abandoned Ramirez has "some merit." *Martinez*, 132 S. Ct. at 1318. We think it does. Ramirez argues that trial counsel performed deficiently at sentencing by failing to object to his classification as a career offender, and that this prejudiced him because, based on the record in the district court, the underlying convictions were not, categorically, crimes of violence. See *Begay v. United States*, 553 U.S. 137 (2008).

We agree with Ramirez that trial counsel's performance was deficient. An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sen-

tence for the defendant can demonstrate constitutionally ineffective performance. See *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011). Ramirez points out that sentencing counsel believed at the time that Ramirez had the requisite convictions to make him a career offender. But by that time, *Begay* had been decided and counsel should have known that the two Texas convictions were suspect. See *Begay*, 553 U.S. at 141. Counsel also said that he unsuccessfully had tried to get the Texas records. He complained that he would have had to subpoena them from the Texas county in which Ramirez was convicted, and that this "would have been extremely difficult to do and time consuming." This lack of desire to uncover the truth was deficient. See *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (deficient performance includes errors arising from "oversight, carelessness, ineptitude, or laziness"). (Ramirez's new counsel obtained the records with little difficulty, and they are now available to this court.)

The next question is whether counsel's deficiency prejudiced Ramirez. See *Strickland*, 466 U.S. at 688–94; *Pidgeon v. Smith*, 785 F.3d 1165, 1171 (7th Cir. 2015). The Texas statute under which Ramirez was twice convicted criminalizes "intentional, knowing, or reckless" assault. The district court concluded that counsel's performance did not prejudice Ramirez because Ramirez never met *his* burden to show that he was convicted of nonviolent assault. The parties also debate whether Ramirez could make that showing now. But at the time of sentencing, it was the government's burden, not Ramirez's, to show (using acceptable materials) that Ramirez's earlier convictions were for knowing or intentional conduct, not reckless actions. See *Johnson v. United States*, 559 U.S. 133, 137 (2010) (without evidence to suggest other-

wise, sentencing judge must presume conviction rested on the least serious act in divisible statute). In his ineffective assistance claim, Ramirez needed to show only that his sentence would have been different had counsel objected to his characterization as a career offender. See *Jones*, 635 F.3d at 916. As the government conceded on direct appeal, it could not meet its burden: neither the charging papers nor the plea colloquy shed any light on which version of assault was the basis for Ramirez's two Texas convictions. Brief for Appellee at 12, *United States v. Ramirez*, 606 F.3d 396 (7th Cir. 2010) (No. 09-1815); see *Descamps v. United States*, 133 S. Ct. 2276, 2281–82 (2013); *Shepard v. United States*, 544 U.S. 13, 24–25 (2005). Any objection by counsel would have been sustained.

Resisting this conclusion, the government directs us to two statements made by Ramirez's ex-wife in which she describes how he attacked her. Because these statements, to which Ramirez stipulated at the plea hearing, depict a violent crime, the government asserts that he was not prejudiced by counsel's failure to object to the PSR. See *Shepard*, 544 U.S. at 24–25; *Taylor v. United States*, 495 U.S. 575, 599–600 (1990); *United States v. Woods*, 576 F.3d 400, 405 (7th Cir. 2009). But those statements shed light only on "what the defendant did," not "what crime the conviction represents." *Ramirez*, 606 F.3d at 398. They do not clarify whether Ramirez was charged with and convicted of intentional, knowing, or reckless assault. Just because he might have been convicted of the more serious conduct does not mean necessarily that he was; it is commonplace for defendants to be convicted on a lesser offense than the facts would have supported. We are left with a record in which none of the permissible documents reveals which of the three possible states of mind was used for Ramirez's convictions.

See *Shepard*, 544 U.S. at 24–25; *Taylor*, 495 U.S. at 599–600; *Woods*, 576 F.3d at 405.

We note in closing that Ramirez was classified as a career offender under § 4B1.2(a)(2)'s residual clause. See *Ramirez*, 606 F.3d at 398 (writing that Texas's assault offense "does not have, as an element, the use or threatened use of physical force, and it is not specifically enumerated in the Guideline, so it can be a crime of violence only under the residual clause of § 4B1.2(a)(2)"). In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the identically worded residual clause of the Armed Career Criminal Act is unconstitutionally vague. Compare U.S.S.G. § 4B1.2(a)(2) with 18 U.S.C. § 924(e)(2)(B)(ii). We have interpreted both residual clauses identically, see *United States v. Billups*, 536 F.3d 574, 579 n.1 (7th Cir. 2008); *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008) (abrogated on other grounds by *United States v. Miller*, 721 F.3d 435, 443 (7th Cir. 2013); *United States v. Rosas*, 410 F.3d 332, 335–36 (7th Cir. 2005), and so we proceed on the assumption that the Supreme Court's reasoning applies to section 4B1.2 as well. This is a point, however, that neither side has briefed, and it may warrant attention on remand. We note that the U.S. Sentencing Commission is now seeking comments on a proposal to change the guideline language to make it conform to *Johnson*. See U.S. Sentencing Commission News Release, "U.S. Sentencing Commission Seeks Comment on Revisions to Definition of Crime of Violence," http://www.ussc.gov/sites/default/files/pdf/news/press-releases-and-news-advisories/press-releases/20150807_Press_Release.pdf. We leave any issue about the effect of *Johnson* on the Guidelines for another day.

**III**

We conclude that Ramirez's situation fits the framework articulated in *Maples, Trevino* and *Martinez.* The district court was apparently unaware of those decisions and thus categorically denied Ramirez's motion under Rule 60(b)(6) without discussing how postconviction counsel's performance affected the integrity of the proceedings. We agree with Ramirez that this amounted to an abuse of discretion. We therefore VACATE the denial of the Rule 60(b) motion and REMAND with instructions to grant the Rule 60(b) motion and reopen the proceedings under section 2255. The record is insufficient to determine if Ramirez has other qualifying convictions that might support affirmance of the sentence on other grounds. That and other pertinent issues may be raised on remand.