In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2977

KEITH E. CHAMBERS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10-cv-3191 — **Sue E. Myerscough**, *Judge.*

ARGUED JULY 6, 2017 — DECIDED AUGUST 10, 2017

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Keith Chambers, a federal prisoner, appeals from the district court's denial of his motion under Rule 60(b) of the Federal Rules of Civil Procedure for relief from the judgment in his habeas corpus proceeding. *See* 28 U.S.C. § 2255. Chambers argues that his postconviction counsel abandoned him by failing to withdraw from his case on appeal, depriving him of the opportunity to file a memorandum in support of his request to this court for a certifi-

cate of appealability. We conclude that the district court properly avoided ruling on the merits of Chambers's Rule 60(b) motion and therefore affirm the judgment.

Chambers pleaded guilty in 2008 to distributing and possessing child pornography. *See* 18 U.S.C. § 2252A(a)(2)(A), (a)(5)(B). At sentencing his attorney argued for a downward variance from the guideline range based on Chambers's diminished capacity, *see* U.S.S.G. § 5K2.13, and his struggles with impulse control. Judge Jeanne Scott sentenced Chambers to 168 months in prison, the low end of the range. In doing so she remarked that Chambers's mental-health issues did not warrant a sentence outside the guideline range. But "in recognition of the good things [he had] done in [his] life," the judge thought a sentence at the low end of the range was appropriate. Chambers voluntarily dismissed his direct appeal.

Chambers next filed a motion attacking his sentence under 28 U.S.C. § 2255. He asserted that his trial counsel was ineffective during the sentencing phase because he did not conduct any presentence investigation, promised him a five-year sentence, and failed to present mitigating evidence. Judge Richard Mills, the new presiding judge, ordered an evidentiary hearing and appointed John Gray Noll and Daniel Fultz to represent Chambers under the Criminal Justice Act. *See* 18 U.S.C. § 3006A.

At the § 2255 hearing, Chambers testified that his trial counsel, John Taylor, had strongly implied that he would get a sentence of five to seven years, so he was shocked when the judge imposed a term of fourteen years. Chambers also asserted that Taylor should have obtained character witnesses and expert testimony to support his sentencing argu-

ments. Taylor testified that he had advised Chambers about the guideline range he faced, reviewed the presentence report with him, and never told Chambers he would receive a five-year sentence. Taylor also explained that he decided against having Chambers's therapist or psychiatrist testify at sentencing because it might "look like Chambers was trying to make excuses" instead of accepting responsibility. (The therapist happened to be Taylor's wife.) Finally, Taylor testified that he relied on the PSR to highlight the sentencing factors under 18 U.S.C. § 3553(a).

Judge Mills denied Chambers's § 2255 motion in a 76-page opinion and declined to issue a certificate of appealability. Trial counsel's performance was not deficient, the judge concluded, because counsel sufficiently presented the relevant mitigating evidence. The PSR thoroughly described Chambers's background and mental-health issues, and counsel made arguments at sentencing regarding Chambers's diminished capacity and work history. Although "some areas could have been fleshed out further," the judge remarked that doing so "bore significant risk" because expert testimony about his mental health could have been damaging and Chambers's crime might seem "even more egregious" in light of his education and work record. Even if counsel's performance had been deficient, the judge ruled, Chambers suffered no prejudice because it was not reasonably probable that he would have received a below-guideline sentence. Judge Mills thought it unlikely that additional evidence or argument in mitigation would have changed the outcome because Judge Scott had already weighed Chambers's good deeds against the aggravating factors and the risk that he might "commit a hands-on offense."

Unsatisfied, Chambers sought our review, and that is when things went awry. Noll was listed as counsel of record on appeal because he filed a notice of appeal, a docketing statement, and later a status report. But Noll told Chambers that he would not represent him any further. When Chambers wrote to the clerk's office asking for guidance on filing a pro se memorandum in support of his request for a certificate of appealability, the clerk's office told him that he was represented by counsel and that his attorney would make any necessary filings. Chambers wrote back, explaining that Noll no longer represented him, but the clerk told Chambers that Noll needed to file a motion to withdraw if he no longer represented him. Although Chambers again wrote to the clerk and even sought the district court's help, his efforts were unsuccessful in removing Noll as counsel of record. In February 2013 we declined to issue a certificate of appealability, explaining that after reviewing the record on appeal, we found no substantial showing of the denial of a constitutional right.

Chambers then commenced a flurry of communications with this court and the district court in an effort to reopen the matter but to no avail. For example, he filed a motion to recall the mandate and a § 2244(b) application mislabeled as a motion under Rule 60(b); both were unsuccessful.

Chambers eventually asked the district court for relief from the judgment under Rule 60(b), which is the subject of this appeal. He argued that he had been deprived of his opportunity to be heard when he was blocked from filing a pro se memorandum in support of his request for a certificate of appealability. He also filed what he called a "merito-

rious defense paper" addressing the merits of his underlying ineffective-assistance claim.

Judge Sue Myerscough, the third district judge assigned to the case, denied the Rule 60(b) motion but concluded that a certificate of appealability was warranted so that we could consider whether Chambers may be entitled to relief "given the unique nature of his circumstances." The judge first concluded that Chambers's motion was a proper Rule 60(b) motion because it challenged a procedural defect that affected the integrity of his original proceedings. Next the judge rejected Chambers's due-process argument under Rule 60(b)(4), noting that he had received a "considerable amount of 'process'" in the district court and that no rule mandates that he be allowed to file papers supporting his request for a certificate of appealability.

The judge thought that Chambers had a better argument under Rule 60(b)(6), which requires "extraordinary circumstances." Pointing to *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), the judge remarked that Chambers, like the petitioner in *Ramirez*, was prevented from arguing to this court why he should be granted a certificate of appealability. The judge ultimately concluded, however, that she could not grant Chambers any relief because she lacked the authority to direct this court to allow Chambers to submit a memorandum in support of his request for a certificate of appealability. The judge recognized that Rule 60(b) allowed her to remedy errors that occurred in the district court, but the rule does not authorize a district judge to give directions to the court of appeals.

On appeal Chambers argues that Judge Myerscough was wrong to think that she lacked authority to grant his

Rule 60(b) motion. He says the judge could have granted relief based on the new and unforeseeable circumstances beyond his control. The government counters that we have already considered—and rejected—the issue of Noll's abandonment of Chambers in denying his motion to recall the mandate and his § 2244(b) application.

The government is correct. Judge Myerscough did not abuse her discretion in declining to reach the merits of the Rule 60(b) motion. The judge properly recognized that although she has discretion to grant relief under Rule 60(b) in many circumstances, she has no authority to order this court to reopen Chambers's appeal. Chambers contends that the judge could have simply vacated the judgment, thereby resetting the clock and providing him a fresh appeal, following the example in *Williams v. Hatcher*, 890 F.2d 993, 995–96 (7th Cir. 1989). But *Williams* is different because it dealt with an error committed in the district court—the failure to file a timely notice of appeal. Indeed, all of the cases Chambers cites involved errors either committed or properly remedied in the district court. *See Maples v. Thomas*, 132 S. Ct. 912, 927 (2012) (failure to appeal); *Ramirez*, 799 F.3d at 849 (same); *LSLJ P'ship v. Frito-Lay, Inc.*, 920 F.2d 476, 478 (7th Cir. 1990) (subsequent change in law). He has not pointed to any case giving the district court authority to remedy complications occurring in the appellate court, nor have we found one.

The proper remedy for counsel's error in the appellate court is a motion to recall the mandate, which serves the same purpose as a Rule 60(b) motion in the district court. *See Burris v. Parke*, 130 F.3d 782, 783 (7th Cir. 1997). Chambers sought that relief and we rejected it. He cannot now reliti-

gate that claim in the district court through the vehicle of Rule 60(b).

That said, even if we were to consider Chambers's argument on the merits, he is not entitled to relief. Rule 60(b)(6) relief requires extraordinary circumstances. *Ramirez*, 799 F.3d at 851. Chambers's circumstances are not extraordinary. True, he was abandoned on appeal: Noll, as counsel of record, did not obtain our consent to withdraw as required by Circuit Rule 3(d) and thus left Chambers stranded and without the ability to help himself. But Chambers has not shown that he will suffer an injustice if he cannot file a new request for a certificate of appealability. *See Buck v. Davis*, 137 S. Ct. 759, 778 (2017). Chambers argues that his original request had little chance of success without a supporting memorandum, citing *West v. Schneiter*: "[A] petitioner who relies on his notice of appeal is hard put to meet the statutory standard … . A notice of appeal does not give reasons, and a silent document rarely constitutes a 'substantial showing' of anything." 485 F.3d 393, 395 (7th Cir. 2007). But in fact, each request for a certificate of appealability, whether accompanied by a supporting memorandum or not, receives our full consideration, and Chambers's request was no exception.

Moreover, we must consider "whether the underlying claim is one on which relief could be granted." *Ramirez*, 799 F.3d at 851; *see also Buck*, 137 S. Ct. at 780. Here we ask whether Chambers's appeal would have been certified had he been allowed to file a supporting memorandum. It would not have been certified. His claims are not debatable. The mitigation evidence he says his trial counsel should have presented—his military records, expert testimony about his

mental health, and character witnesses—was adequately covered in the PSR and arguments of counsel or easily could have backfired on him, highlighting the inexcusable nature of his crime and leaving him without a diminished-capacity argument.

AFFIRMED.