NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 8, 2020
Decided July 17, 2020

*Before*

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1258

| | |
|---|---|
| In the Matter of: ANDREW and MEGAN S. REES | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| | No. 19-cv-3004 |
| | John Robert Blakey, *Judge*. |

## O R D E R

Andrew and Megan Rees appeal the denial of their motion to vacate the dismissal of their bankruptcy case. *See* FED. R. CIV. P. 60(b)(6). Because relief under Rule 60(b)(6) requires extraordinary circumstances that are not present here, we affirm the judgment.

The Reeses, a married couple with small children, filed for Chapter 13 bankruptcy in March 2014. At the time, they owed about $400,000 to secured creditors and $58,000 to unsecured creditors. Their five-year repayment plan required 60 monthly payments.

The unsecured creditors were likely to receive most of their allowed debt and were guaranteed over 30% of it. One of the Reeses' major unsecured creditors, Chase Bank, did not timely file claims on $28,000 of credit-card debt. Two consequences flowed as a result. First, because that debt made up about a third of the unsecured debt, the other unsecured creditors were estimated to receive over 90% (as opposed to 30%) of the debt owed to them. Second, if the Reeses fulfilled their obligations under the five-year plan, that debt would be discharged without payment.

Over the course of the five-year plan, several financial blows hampered the Reeses' ability to make their required monthly payments. Replacing the roof of their house in 2016 cost $6,000; braces for their daughter cost $6,200 in early 2018; and repairs for their two high-mileage vehicles cost $20,000. Also, at the end of 2018, Andrew Rees changed his employment to two part-time jobs, which provided lower, though more dependable, pay.

These events led to missed payments required under their plan, and the trustee moved three times to dismiss the case for failure to make payments. The trustee withdrew the first motion after the Reeses substantially cured their default, and she withdrew the second motion after the repayment plan was modified to account for the missed payments. Default occurred again in 2018, when the Reeses fell more than $9,000 behind on the mortgage payment, but they managed to avert foreclosure. Then, a few months later, the trustee filed the third and final motion to dismiss the case in October 2018 when the Reeses defaulted yet another time. At that point, the Reeses had made 55 of their 60 monthly payments, totaling over $46,000. The bankruptcy court granted this motion and dismissed the Reeses' case for material default. Notably, during this time, the Reeses never sought to modify their payments under the plan.

Two months later, the Reeses invoked Federal Rule of Civil Procedure 60(b)(6) to ask to vacate the dismissal, raising three arguments. *See* FED. R. BANKR. P. 9024. First, they said, the default was caused by "unforeseen financial hardships" (the roof, braces, and car repairs) and Andrew's job change. Second, since the dismissal of their case, they had come up with the money to make the missed payments and to satisfy the few that remained on their plan. Third, a refusal to discharge their debts would cause them unusual hardship, given how far along they were in the five-year plan and how much money (more than $50,000 at the time of their Rule 60(b) motion) they had provided to comply with it. The trustee opposed the motion, completed her audit of payments

made, and refunded to the Reeses any newly tendered funds. The Reeses replied that they were ready to return the refund and make the missed and remaining payments.

The court denied the Reeses' motion. It explained that the Reeses' circumstances were "not extraordinary," as it "see[s] motions like this all the time. People default on their plans. Then they race in with money and say please vacate the dismissal because we've got the money." The court further reasoned that the denial of discharge was not itself an extraordinary hardship because the Reeses received the "benefit[s]" of paying "down their debts during the pendency of the case" and "the automatic stay while they made those payments." Finally, the court stated that if it granted the Reeses' motion, it would "have to contradict what [it] always [does] in the face of objections from the trustee, and that is, grant all the other ones. Then we have a disincentive for people to make their plan payments."

The district court affirmed. It ruled that the bankruptcy court reasonably concluded that the Reeses' circumstances were not extraordinary and, thus, did not abuse its discretion in denying the motion. And, because the bankruptcy court had "determined that the facts failed to make the case exceptional," the bankruptcy court's "concern that granting the Reeses relief would create bad precedent was well-founded."

On appeal, the Reeses argue that the bankruptcy court abused its discretion in denying their motion to vacate the dismissal. They maintain that unforeseen expenses precipitated the default, they were close to completing their bankruptcy plan, and they could pay the remaining amount owed. The Reeses have not appealed the underlying dismissal of their bankruptcy petition; had they done so, review would be for abuse of discretion. *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002). Relief under Rule 60(b) adds another layer of discretion. It is "an extraordinary remedy" granted "only in exceptional circumstances." *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000)). And relief under Rule 60(b)(6) in particular—the catchall provision—is even more extraordinary. *In re Neuberg v. Michael Reese Hosp. Found.*, 123 F.3d 951, 955 (7th Cir. 1997) (calling Rule 60(b)(6) an "even more highly circumscribed exception in [a] rule already limited to exceptional circumstances"). With one discretionary judgment piled on another one, we review the decision to deny a motion under Rule 60(b) for an abuse of discretion and will disturb that judgment "only when 'no reasonable person could agree' with the decision to deny relief." *Eskridge*, 577 F.3d at 809 (citing *McCormick*, 230 F.3d at 327).

The bankruptcy court reasonably concluded that circumstances preceding the Reeses' default were ordinary and did not warrant vacating the dismissal. The events that the Reeses cited for missing payments—predictable car maintenance, normal roof repairs, customary braces, and a voluntary change in jobs—are ordinary events and may be reasonably anticipated. The Reeses furnished no evidence that compelled the bankruptcy court to find that, in their case, they nonetheless could not have foreseen these events and planned for them.

But even if some of these events were so atypical that they could not have been reasonably foreseen, the Reeses had an option other than flouting their payment obligations and defaulting: they could have filed a motion under 11 U.S.C. § 1329 to modify their bankruptcy plan to account for the unexpected obligations. The Reeses' expenses did not suddenly occur in month 55 of their 60-month plan. They occurred earlier: in 2016, when they had to repair the roof, they could have requested modification; again, in early 2018, when they had to pay for braces, they might have sought this relief; and throughout the five years when their car expenses added up, this option was available. Thus, the Reeses' contention—that by October 2018, when the trustee filed the third motion to dismiss, it was too late to ask the court to modify the plan—is unpersuasive.

The bankruptcy court also reasonably rejected the Reeses' view that, because they were near discharge, had paid about 90% (or $50,000) of unsecured debt, and were ready to complete their plan, refusing to vacate the dismissal would be harsh. To be sure, Rule 60(b) is an equitable remedy, *Ramirez v. United States*, 799 F.3d 845, 851 (7th Cir. 2015), so a court might reasonably conclude that a dismissal near completion of a plan is less warranted than a dismissal at its start. (The out-of-circuit cases cited by the Reeses so conclude.) But it does not follow that, just because a bankruptcy court *may* vacate a late-in-plan dismissal, it *must* do so. In considering the equities, the bankruptcy court reasonably observed that, although the Reeses had paid about 90% of the debt owed to unsecured creditors, that was "all money that these folks have owed"; paying it back was thus not a gratuitous gesture. And even if a 90% repayment rate was relatively high compared to other bankruptcy plans, as the Reeses maintain, the bankruptcy court could reasonably attribute that rate, not to the Reeses' industry, but to the failure of Chase—the Reeses' major unsecured creditor—to file a claim.

This analysis suggests that the Reeses' arguments would not compel a reversal of a discretionary decision to dismiss their bankruptcy case; they therefore do not compel a reversal of a discretionary refusal to grant Rule 60(b) relief. Furthermore, "[t]hat rule

is designed to allow modification in light of factual information that comes to light only after the judgment, and could not have been learned earlier." *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002); *see also In re Taylor*, 575 B.R. at 394 (even more true in a Rule 60(b)(6) context). The only circumstance that arose after dismissal was the Reeses' claim that they could now pay the debt remaining on their bankruptcy plan. But the bankruptcy court considered that fact and stated that it sees similar circumstances "all the time," so it reasonably deemed this "new" situation was ordinary. *See Eskridge*, 577 F.3d at 810 (The test is "not whether the district court might have decided differently, but whether the court's denial of the … Rule 60(b) motion was unreasonable.").

Finally, the Reeses argue that the bankruptcy court made a reversible error of law. *See Ramirez*, 799 F.3d at 849 (abuse of discretion when court commits material legal error). The court, the Reeses contend, wrongly feared that by granting relief in this case, it would lose its discretion to deny relief in future cases. For support, they cite this statement from the court: "These circumstances are ordinary. And if I grant this motion, I'll *have to* grant … all the other ones." (Emphasis added.) But the most natural reading of the court's statement that is that granting the Reeses' motion would create bad precedent: it would treat ordinary circumstances as extraordinary ones and incentivize late payments. *See In re Mrozinski*, 489 B.R. 818, 823 (Bankr. N.D. Ind. 2013) (denying Rule 60(b) motion in part because "[t]o grant the debtor's motion because he has now done something he should have done months ago would encourage others to [do the same] without much danger of jeopardy"). Avoiding bad precedent is appropriate judicial business, so the bankruptcy court did not commit a legal error.

AFFIRMED